MUNGER and another vs. LENROOT, Sheriff.

*Lien on logs, for labor, etc.— Ch. 154, Laws of 1862.—Where laborer employed by contractor, owner need not be made a party, nor notified of claim.— Rights and remedy of owner.— Validity of the act.*

| 32 | 541 |
|---|---|
| 80 | 179 |
| 80 | 182 |
| 32 | 541 |
| 88 | 293 |
| 32 | 541 |
| 109 | 572 |

1. Under ch. 154, Laws of 1862, one who has done work or performed service in cutting, hauling, etc., logs in the counties there named, has a lien upon the logs for the amount due him for such labor or services, not only when he is employed by the owner of the logs or of the land from which they are cut, but also when employed by a contractor under him.

2. Said ch. 154, Laws of 1862, and ch. 215, Laws of 1860, though they relate to different counties, being otherwise precisely similar, are statutes *in pari materia,* and the legislative construction of the act of 1860 by ch. 144, Laws of 1869, is entitled to an almost controlling weight in construing the act of 1862.

3. Where the laborer in such a case is not employed by the general owner of the logs, the latter is not required to be made a party to the action to enforce the lien.

4. The owner in such a case is not deprived of his day in court, but may bring an action against the officer who has seized the logs at the suit of the lien claimant, and is entitled to show in such action that there was collusion between such lien claimant and his employer, or that the amount adjudged to be due the former, in his action against the employer, was not in fact due him.

5. The fact that such employer has not fully executed his contract with the general owner of the logs, and is not entitled to any part of the price agreed to be paid him for cutting and running the logs, will not prevent the laborer's lien from attaching, nor invalidate a judgment to enforce such lien by a sale of the logs.

6. DIXON, C. J., dissents, holding
   (1.) That the act as construed by the court would be invalid, because it would subject the property of one person to sale for the debts of another, without requiring timely notice to be given the owner, of the claim made, or that he be made a party to the action, or permitting him in any manner to avail himself of the defense that, since being notified of such claim, he has not been indebted to the contractor by whom the claimant was employed.
   (2.) That the construction given to a statute by a subsequent act of the legislature is not binding upon the courts except as to facts occurring *after* the passage of such explanatory act.

(3.) That a legislative explanation of a statute which makes it, void, when it is otherwise susceptible of a construction which would render it valid, should be disregarded.

(4.) That the act of 1869, since it does not *relate* to the act of 1862, should not be regarded as construing the latter act.

APPEAL from the Circuit Court for *Douglas* County.

Replevin for logs seized by defendant, as sheriff, under certain writs of attachment. The defendant had judgment for a return of the property (of which plaintiffs had obtained possession under the statute), and in case such return could not be had, then that he recover of the plaintiffs and the sureties on their replevin bond a specified sum as the value of said defendant's special interest in the logs. The facts bearing upon the question at issue are fully stated in the opinion of Mr. Justice COLE.

The plaintiffs appealed from the judgment.

*Henry N. Setzer*, for appellants.

*Geo. W. Perry* and *H. Hayes*, for respondent, with *Gregory & Pinney*, of counsel.

COLE, J.    In this case it is claimed by the plaintiffs and appellants, that the judgment of the court below is not warranted by the finding of the court.

· The action was replevin for a quantity of saw logs, and was tried by the court without a jury. There is no bill of exceptions, and the sole question is, whether the judgment can be sustained upon the facts found. The material facts, as found by the court, were briefly these:

The plaintiffs, being partners and doing business in Minnesota, in the winter of 1870–71, entered into a contract with one Marcotte, in and by which the latter agreed to cut into saw logs the standing timber upon the plaintiffs' land therein described, which was situate in Douglas county in this state, and to deliver the logs so cut to the plaintiffs at their mill in Oneota, Minnesota, for $5.00 per thousand feet. The plaintiffs

engaged to furnish Marcotte supplies, and to pay in full on delivery of the logs at their mill.

Marcotte hired a number of men to assist him in cutting the logs upon the lands mentioned, and in hauling, driving and booming the same that winter. A portion of those logs — being those in controversy in this action — were driven down and boomed in the Nemadji river, near its mouth. All of the logs were marked " M."; and the court finds that the property of the plaintiffs in the logs was never transferred. In April and May, 1871, several of the persons whom Marcotte had hired to aid him in cutting and driving the logs to the point above named, duly instituted proceedings under the statute to enforce their respective liens against the property for labor performed upon it, and for the amount due them for their services. They obtained judgments before a justice declaring their liens; and the defendant, as sheriff, by his under-sheriff, took possession of the logs in suit, and held such possession when this action was commenced, by virtue of writs of attachment issued in the lien suits, and upon executions subsequently issued on the judgments rendered therein.

These suits were all against Marcotte, and it does not appear that the plaintiffs had any notice whatever of them. The court held, upon the facts, that the lien proceedings were regular and valid; that the right of property in the logs was in the plaintiffs, subject to these liens for labor, etc.; and that the sheriff had a special property in the logs to the amount of his executions, and had the right to the possession of the property; and it gave judgment accordingly.

The first objection taken by the counsel for the plaintiffs is, that the men employed by Marcotte, under whom the defendant justifies, did not and could not have a lien upon the logs under the circumstances; or, if they had such a lien, it could only be for the amount which the plaintiffs might owe Marcotte upon the contract when fully completed and performed by him.

This objection manifestly, at the outset, calls for a construction of ch. 154, Laws of 1862, which gives a lien for labor and services upon logs and lumber in certain counties in the northwest part of the state. The first section of that chapter in effect provides, that any person who may do or perform any work or services in cutting, felling, hauling, driving, running, rafting, booming, cribbing or towing any logs or timber in the enumerated counties (of which Douglas county is one), shall have a lien thereon for the amount due for such labor or services; and that the same shall take precedence of all other claims thereon. Subsequent sections point out the way in which the lien is to be enforced. Section 12 enacts that in all suits under the provisions of the act, the person or corporation liable for the payment of the debt or claim shall be the defendant. The next section provides the nature of the judgment which shall be rendered, which, in addition to finding the sum due the plaintiff, shall also find generally that the same is due for labor and services for which the action is brought, and which were performed on the logs and timber set forth in the complaint therein, and that the same is a lien thereon; and the execution issued thereon, in addition to the usual directions contained in ordinary executions in civil actions, may direct and command that the logs and timber upon which the labor was performed shall be sold to satisfy the judgment.

Now it is argued by the counsel for the plaintiffs, that this statute did not give the workmen any lien, because they were hired and employed by Marcotte, and not by the plaintiffs, the general owners of the logs and of the land upon which they were cut. The lien is given, it is said, only when the laborer is employed by the owner of the property upon which the labor is expended, or by his authority, and does not exist when he is employed by a contractor, as in the case at bar.

It seems to me that this is an erroneous view of the statute. The object of that statute manifestly is, to secure to the person

who has performed any labor or services upon logs or timber, a lien for the amount due for such labor or services. The statute is founded upon the equitable principle that the laborer who, by his services, has imparted additional value to property of this kind, shall have a lien upon it for his reasonable charges. His right to the lien does not depend upon the fact that he was employed by the general owner of the property to perform labor upon it; but he has the lien when hired by a contractor. So far as the general owner is concerned, if he does not himself employ the laborer, the proceeding is strictly *in rem*. Where the laborer is employed by one not the general owner, as in the case before us, the proceeding has a double aspect, to enforce the personal liability of the debtor as well as to enforce a lien given by the statute. This law requires that the person or corporation liable for the payment of the debt shall be the defendant in the action; but I think the legislature did not intend to restrict the lien to the case where the general owner hired the laborer and was himself personally liable for the services. If this were the intention of the statute, then it is very apparent that many cases would arise where the laborer would have no lien, because not employed by the general owner, but by a contractor. I have no doubt, therefore, that the legislature intended by the first section to give the lien absolutely to the laborer, regardless of the question whether he had rendered the services under a contract with the general owner or not. But if I had any serious doubt upon this point, the history of the legislation upon this subject would remove it. Ch. 154, Laws of 1862, contains substantially the same provisions in regard to a lien for labor upon logs and lumber as those contained in ch. 215, Laws of 1860, which gave the lien in certain counties in the northeast part of the state. And there is surely the same ground for holding under the latter statute that the right to the lien existed only when the laborer was employed by the general owner, as there is to insist upon such a position under the former enactment. And yet we find the legislature in 1869

amending the law of 1860, so as to make it the duty of the person claiming the lien in those counties to which that act applies, before commencing suit to enforce the lien, to notify the owner of the logs or timber, if known, by written notice of the filing of the petition for a lien, "which notice shall state the time and place of the filing of such petition, the amount claimed therein, the mark of the logs or timber upon which a lien is claimed, *and the name of the person for whom the labor was performed;*" and the owner has the right to appear and defend the action in the same manner as if made a party thereto. Ch. 144, Laws of 1869. Now it is very evident that the legislature passed the amendatory statute upon the assumption that the law of 186 0 gave the laborer the lien where he performed the services upon the logs under a contract not made with the owner, but with some other party. Consequently, provision was made for notifying the owner of the property against whom the laborer had no legal claim — when the person with whom he contracted was other than such owner — of the filing of the petition for a lien, and the logs upon which the lien was claimed, and the name of the person for whom the labor was performed. The conclusion is therefore irresistible, that the legislature, in passing the amendatory act of 1869, proceeded upon the assumption that the laborer had a lien by the previous statute, and that he might enforce it against the logs where the debtor with whom the contract to labor was made was not the owner. And hence this very salutary provision requiring the owner of the property to be notified of the lien proceedings, and the opportunity afforded him in that suit to contest the right and extent of the laborer's lien.

This legislative exposition of the law of 1860 is entitled to almost controlling force when placing a construction upon a precisely similar statute. Indeed these statutes relating to laborer's. liens are *in pari materia*, and we may look at one to discover the true interpretation of another. And I cannot doubt that the action to enforce the lien may be maintained

by the laborer although his services were not rendered under a contract made with the owner of the property. In this connection I may make a remark on the case of *Jacobs v. Knapp*, 50 N. H., 71, to which our attention was called by the counsel for the plaintiffs. As I understand that case, there is nothing in it in conflict with the views above expressed. The court were there considering the purpose and object of the act of 1866, giving a person who labors at cutting or drawing wood a lien thereon for his personal services; and they thought it must be construed in connection with previous statutes, which gave no lien except where the labor was performed " by virtue of a contract with the owner." See R. S. N. H., 1867, p. 261, section 11. This may be a very correct exposition of the statutes of New Hampshire upon the subject of laborers' liens, but the decision aids us in no essential manner in determining the meaning of our own laws. For myself I have no hesitation in holding that our statutes must be differently construed, and that it was the intention of the legislature to give the laborer a lien upon the logs and lumber benefited by his work, whether such work was performed under a contract with the owner or not.

But it is further objected on the part of the plaintiffs, that they had no notice of the lien proceedings — never had their day in court, nor the least opportunity to protect themselves, or to assert their rights. It would be monstrous doctrine, it is said, to enforce the lien judgments against the property of the plaintiffs under such circumstances, and conclude them by suits between Marcotte and his laborers, who might have been paid, or failed to perform the labor which they claimed was expended upon the logs.

It seems to me the same amendment should be made to the lien law applicable to the northwestern part of the state, which has been made to that relating to the counties in the northeastern portion. This would enable all questions in relation to the lien and the ownership of the property to be settled in

one suit, and avoid subsequent litigation between the owner and officer as in the case before us. But the plaintiffs have not been prevented from having their day in court. They have brought this suit to recover their property. They were not precluded from showing that there was collusion and fraud between Marcotte and the men hired by him, and that the latter were not entitled to enforce any liens against their property. They cannot be concluded by judgments to which they were not parties, and which were *inter alios actæ*. This principle is elementary. In Maine, prior to 1855, it was not necessary to make the owner of the property a party, or give him notice of the pendency of the lien suit, when the laborer had no personal claim against him for his services. And in *Redington v. Frye*, 43 Maine, 578–587, the court makes remarks quite applicable to the question we are considering. Mr. Justice CUTTING says: "We have seen that prior to this statute, a judgment might be recovered on a lien claim in an action wherein the interest of a third party had not been represented, and inasmuch as the execution might be satisfied by the property of the judgment debtor without resort to that of such third party, no injury might be sustained by him. But whenever his property has been taken, such third party would not be precluded by such judgment (it being *inter alios acta*) from having his day in court; and in a suit against the officer he has heretofore been permitted to show that such judgment did not embrace a lien claim to its full extent, and to controvert any facts tending to establish the lien." See also *Thompson v. Gilmore*, 50 Maine, 428; *Bean v. Soper*, 56 id., 297; *Paine v. Gill*, 13 Wis., 561; *Paine v. Woodworth*, 15 id., 298. In this case it was competent for the plaintiffs to show that the persons employed by Marcotte performed no labor upon these logs, and were not entitled to judgments which were liens upon them. In the state of this record, however, we must assume that those men did render services for Marcotte to the amount claimed by them, and that the logs attached were the

identical ones upon which their labor was expended. It was essential that the identity of the property should be established in the attachment suits, otherwise the lien would not attach; and the labor must have been performed upon the specific property seized.

But furthermore it is claimed that until Marcotte had performed his agreement with the plaintiffs, neither he nor his servants had any claim upon them, nor upon the logs. The men hired by Marcotte surely had no personal claim against the plaintiffs for their services; but we see no reason for holding that they could not enforce their liens until the logs were delivered to the plaintiffs at their mill in Minnesota. Their right to a lien upon the logs for the work performed by them, did not depend upon the execution by Marcotte of his contract with the plaintiffs.

This disposes of all the material questions so fully and ably presented by the counsel for the plaintiffs for a reversal of the judgment.

The judgment of the circuit court must be affirmed.

LYON, J., concurred.

DIXON, C. J. I differ altogether from my brethren as to the true construction of the statute; and I think, also, that too great influence has been ascribed to the supposed subsequent legislative interpretation of it. As construed by them I think there exist very grave constitutional objections to its validity and operation.

It is of course understood that the amendatory act of 1869, relied upon as a legislative construction or declaration of intent, applies only to the law of 1860, the act amended, being that which gives a lien on logs and lumber in certain of the northeastern counties. The amendment has no direct application to the act under consideration, which was passed in 1862, and which gives a like lien in several of the northwestern counties.

That act is resorted to, therefore, merely in endeavor to strengthen the argument or confirm the construction which the majority of the court have seen fit to put upon the act here in question, which was copied from the law of 1860, and confers the lien in the northwestern counties. The several acts will be readily understood by turning to 2 Tay. Stats., pp. 1768 to 1774, inclusive, and taking notice that the amendatory act of 1869 is found as the proviso to § 48, p. 1773, and as § 50, p. 1774.

As above remarked, the construction put upon the act by my associates suggests most serious constitutional difficulties in the way of its validity and operation. Thus construed, I cannot regard it as a valid and obligatory enactment. With such construction it subjects the property of one person to a lien for, and charges it with the payment of, debts contracted by another, without giving the owner any adequate means of protection against the claims thus created against him or against his property, and without affording him any time or opportunity to appear and be heard in his defense. The act gives him no opportunity for defense or the establishment of his rights, because, as construed, he can not, in any form of action which may be instituted, not even in an action like the present, make a full and sufficient defense if he has one, or vindicate his rights, legal or equitable, according to the settled principles of jurisprudence as administered and applied in other civil actions. He can in any action only show fraud or collusion between the petitioner or claimant and the party contracting the debt, with respect to the existence or amount of such debt, or that the debtor did not owe the full sum claimed or for which judgment was rendered. He is limited in his defense or the assertion of his rights to these particulars, and can not discharge the lien or release his property from seizure by showing that at the time of petition filed in the office of the clerk of the circuit court, he himself owed nothing for the labor and services performed, or that he had fully paid the party with

whom he contracted, for all such labor and services. It thus appears that the most just and equitable, and consequently the very best of defenses, is cut off by the act, and the owner of the property deprived of the privilege of making it. No act which does this, without at the same time providing that timely and reasonable notice shall be given to the owner of the nature and amount of the claim, so that he may take proper steps for his own protection and to guard against loss and injury, can, in my judgment, be held valid and obligatory.

It will be seen from a perusal of the act, that no provision whatever is made for notice of any kind being given to the owner of the property, of the claim made against it for labor or services, and that he is not even to be notified of the commencement or pendency of the action for the enforcement of such claim. In this respect the act differs entirely from any with which I am acquainted, where the intention of the legislature has been to give a lien in favor of a subcontractor, or laborer not employed by the owner of the property. It does not appear that the statutes of Maine under which the decisions referred to in the opinion of the court were made, contained no provision for such notice. It only appears that prior to 1855 there existed no requirement that the owner of the property should be made a party to the action. What the clauses were which restricted the liability of the owner, or enabled him to protect and preserve his legal and equitable rights as against the claims of subcontractors and laborers to whom he was a stranger by contract, unless such rights were lost through his own fault or negligence, we are not informed by the reported decisions. The laws of this state giving such liens in other cases, and which have been upheld by the decisions of this court, have invariably required the service of notice upon the owner, and have likewise confined the lien within certain narrow and well defined limits, so as, with the exercise of reasonable care and prudence on his part, to insure the safety and protection of the owner against unexpected and unjust de-

mands, and so also as not unnecessarily to embarrass or lead to great inconvenience and trouble in the transactions and dealings between the owner and the contractor, or person employed by the owner to do the work. The statute of this state giving the lien to subcontractors and material-men for work done or materials furnished in the construction or repair of any building or machinery, requires notice in writing to be given to the owner or owners, or his or their agents, within thirty days after having performed the work or furnished the materials, and expressly declares that "no claim of any subcontractor shall be a lien, under this chapter, except so far as the owner may be indebted to the contractor at the time of giving such notice, as aforesaid, of such claim, or may become indebted afterwards to him, as such contractor." R. S., ch. 153, secs. 2, 3; 2 Tay. Stats., 1793, §§ 3, 4. And the same statute likewise requires the owner to be made a party to the action to enforce the lien. *Hall v. Hinckley, ante,* p. 362.

And in like manner the law creating the lien in favor of laborers upon railroads requires written notice to be given to the railroad company within thirty days after the demand shall have accrued, and limits the demand to such as shall have accrued within sixty days prior to the giving of such notice. The claimant is required to specify in such notice the particular nature and amount of the claim or demand; and the action to enforce it must be brought against the railroad company 1 Tay. Stats., 1051, § 57; *Mundt v. Railroad Company,* 31 Wis., 451; *Streubel v. Railroad Company,* 12 Wis., 67.

The absence, in the statute before us, of the same or any similar provisions for the protection of the rights of the owner, and to save the embarrassments, inconvenience and great injustice which must otherwise ensue, leads me unavoidably to the conclusion that the legislature did not intend to give the lien to any but the contractor or person primarily engaged to do the work or render the services. This conclusion avoids the injurious consequences, and removes the obnoxious features, of

which I have spoken; and it is a conclusion not inconsistent with the language or any specific provision to be found in the act. This view leads to no sacrifice or destruction of the legal or equitable rights of the owner, which are as worthy of protection and as much to ' be respected, both by the legislature and the courts, as those of the subcontractor or laborer. It does not require one man to pay the debts of another, or that his property shall be sold for that purpose, without giving him notice of the proceeding or of the demand made against him, or an opportunity to defend, or for self-protection by precautionary measures seasonably taken. It will be seen, by examination of section two of the act (Tay. Stats., § 27, p. 1769), that the demand of a subcontractor or laborer may continue for a whole year, and, after slumbering that length of time, may then be prosecuted by action commenced within four months thereafter, and the property of the owner seized and sold in satisfaction of it, and all this without any notice to the owner either of the demand itself or of the proceeding by which it is enforced — without any knowledge, privity or assent on his part, and without his being in fact indebted a single farthing on account of the claim so asserted against him. If the right of private property can be thus disregarded, and the estate of one individual sacrificed to satisfy the debts of another, it is something in the principles of American constitutional law which I have yet to learn.

And I cannot but express my satisfaction and the deep sense of obligation I feel for the clear and able opinion in the case of *Jacobs v. Knapp*, 50 N. H., 71. For, notwithstanding what is said in the opinion of my brethren, it will be found on examination, I think, that that case presented the identical question here involved. It is very rare that cases arising in different states, especially of statutory construction or constitutional law, are more exactly alike. And the unanimous judgment of a court composed of six judges so distinguished for learning and ability as those of New Hampshire are, ought to be no incon-

siderable evidence of what the law is. As in most of the causes decided by that court, the opinion is elaborate and well considered, and leaves no room for me to doubt the correctness of the decision. The effective words of the statute giving the lien were the same as those of our own, and yet the court held that the lien was limited to the party alone who contracted with the owner of the property upon which the labor of the contractor and of his subcontractors or servants was expended. In so doing, the court considered the question in all its bearings, examined the several decisions of the supreme court of Maine to show that they were not in conflict or opposed, and finally rested its decision chiefly upon the ground that any other construction would render the statute wholly unconstitutional and void. The opinion concludes as follows: " And if it should be considered that a proper construction of our law *requires* us to hold that its purpose and intent was to give the lien to subcontractors without such provision or qualification as is afforded by such laws as the late statute of Maine, we should be inclined to deem it *not* ' questionable ' that, in its present form, it is entirely subversive of the fundamental principle of all free governments, that no person can be deprived of or prejudiced in his property or rights by the judgment of any court, unless he has notice of such proceedings and an opportunity to defend. That notice and that opportunity is not accorded by any provision of the law, and is not afforded by any such process or practice as is adopted in the present case. So far, then, as the statute may or must be construed as giving and enforcing the laborer's lien by an action against the person or property of a party between whom and the plaintiff there has never been any privity of contract, it can only be regarded as unconstitutional and void."

The foregoing remarks were based as well upon the want of any provision in the statute requiring notice to be given to the owner of the claim of the subcontractor or laborer, and limiting and defining the lien for such claim, as upon the absence of any re-

quirement that notice should be given to the owner of the commencement of the action to enforce the claim. For in other parts of the opinion we find the court recognizing the principle, "that, to a certain extent, the relation thus created between the owner and the subcontractors may be such as to impose upon the former liabilities to the public for the negligence of the subcontractors, and even, it may be, *for debts incurred*, with which the principal, the owner, had nothing to do." Privity of contract, sufficient to sustain the lien in favor of subcontractors and of laborers, may undoubtedly, when suitable safeguards and limitations are enacted for the protection of the principal or owner, be explained and established upon the principle of sub-agency, as has been held by this court in the cases of the railroad laborers' liens above cited.

And again, the reference in the opinion to the statutes of other states which enact that no subcontractor, or person who may have done work or furnished materials for the contractor, shall have the benefit of the lien, "unless, within a prescribed time after his employment by the contractor, *he shall give notice to the owner that he is so employed and will claim the benefit of the lien*," indicates very plainly the importance, in the mind of the court, of such a requirement, and which, as it seems to me, must be apparent to every one who carefully considers the subject.

And the very decision from which my associates quote, *Redington v. Frye*, 43 Maine, 578, 589, which case arose after the passage of the statute of that state in 1855, requiring notice to be given to the owners of logs in all suits brought to enforce lien claims, expressly recognize the constitutional principle for which I contend. The court say: "And, before the statute of 1855, it may be questionable how far a party had the constitutional privilege of seizing and confiscating the property of another, in violation of private rights, without an opportunity to be heard." In support of this view *Marsh v. Flint*, 27 Maine, 475, 479, was cited, which was a case arising under a

statute regulating the rights of owners whose logs became mixed with those of others in a drive. In commenting upon a construction which was attempted to be put upon the statute by counsel, the following language occurs in the opinion: "The question therefore arises, whether logs owned by one person may be seized, libelled and sold, to pay not only the expense incurred in driving them, but also the expenses incurred in driving the logs owned by another person. A construction of the statute that would permit this, must rest upon the conclusion that the legislature intended to allow the property of one person to be taken to pay the debt of another. If this were the design, it would exhibit an attempt to violate private rights in a manner not permitted by the constitution. Such a construction should not be admitted, if the statute may receive any other reasonable one. So far is the statute from requiring such a construction, that it is apparent that the legislature had no such intention."

In this case, therefore, if the supposed declaratory act of the legislature applied in terms to the law under consideration, I should be bound to reject it, or to disregard the construction attempted to be given by the legislature.

And neither can I assent to the views of my associates respecting the weight or influence to be accorded to a legislative interpretation or declaration of the intent of a previous statute. The construction of statutes is a judicial and not a legislative function. The legislature may prescribe the rule or declare the intent for future cases, but not for those which are past. As to past cases, or acts occurring before the declaratory law is enacted, such law is of no force or effect. The only possible exception to this rule is that indicated in *O'Connor v. Warner*, 4 W. & S., 223, where it was held that until the judiciary has fixed the meaning of a *doubtful* law, upon which rights have become vested, it may be explained by legislative enactment. This principle as to the inefficacy of legislative declarations of the intent of previous laws, has been vindicated

and applied in numerous instances. It was so in the recent case of *Haley v. City of Philadelphia*, 68 Pa. St., 45, where the court say that "it would be monstrous to maintain that where the words and intention of an act were so plain that no court had ever been appealed to for the purpose of declaring their meaning, it was therefore in the power of the legislature, by a retrospective law, to put a construction upon them contrary to their obvious letter and spirit." Other decisions of the kind will be found in *Dash v. Van Kleeck*, 7 Johns., 498, 508, 509; *People v. Supervisors*, 16 N. Y., 424; *Lambertson v. Hogan*, 2 Pa. St., 25; *Greenough v. Greenough*, 11 Pa. St., 494; *Reiser v. The William Tell Saving Fund Association*, 39 Pa. St., 137; and *Governor v. Porter*, 5 Humph., 165. A legislative explanation of a law, therefore, which explanation makes the law void, the same being otherwise valid or fairly susceptible of a construction which will make it so, is *a fortiori* of no effect, and should be wholly disregarded.

It is for reasons like these that I dissent from the decision of the majority of the court, and am of opinion that the judgment appealed from should be reversed, and the cause remanded with directions to render judgment for the plaintiffs according to the demand of their complaint.

*By the Court.* — The judgment is affirmed.

## CHAFIN WILL CASE.

(1) *Effect of verdict of jury in case of a contested will.* (2, 3) *Indicia of mental unsoundness inconsistent with testamentary capacity.*

1. Where the circuit court, on appeal from the decision of the county court respecting the admission of a will to probate, submits a question of fact to a jury, the verdict has substantially the effect of a verdict on