# WINSLOW and others vs. URQUHART.

STATUTORY LIEN: LABOR UPON LOGS. *(1) Statutes valid. General owner not necessary party. (2) Rights of general owner; may replevy; not estopped by lien judgment. (3) When justice's judgment for a lien presumed valid. (4) One who cooks food for the loggers, etc., entitled to lien. (5, 6) Form of affidavit for attachment in such cases.*
PRACTICE. *(7) New trial in replevin, after judgment reversed.*

1. The statutes of 1860, 1862 and 1869, relating to liens upon logs for labor or services connected therewith, are valid; and where the laborer is not employed by the general owner of the logs, or of the land on which they are

cut, but by a contractor under him, proceedings to enforce the lien are not invalid because such general owner is not made a party. *Munger v. Lenroot*, 32 Wis., 541, adhered to.

2. A judgment for the plaintiff in such an action does not estop the general owner of the logs from denying the right of such plaintiff to a lien upon them, in replevin by such owner against the purchaser under the judgment.

3. In replevin for logs, where defendant claims under a judgment of a justice's court to enforce an alleged lien on the logs, which is regular on its face, such judgment must be held valid, unless the contrary affirmatively appears; and all reasonable presumptions consistent with the record will be made, to sustain it.

4. The statute (Tay. Stats., 1768, § 25) gives to any person "that shall furnish any supplies, or that may do or perform any labor or services in cutting, falling, hauling, driving, running, rafting, booming, cribbing, or towing any logs or timber," a lien on them "for the amount due for such supplies, labor or services." *Held*, that these terms include an amount due under contract for cooking food for the men engaged in driving the logs.

5. The *affidavit* for an attachment in this case, after stating the sum due plaintiff from defendant above all legal setoffs, adds, "that said indebtedness is due for labor and services performed by plaintiff for the defendant in and about cooking for men driving pine logs," etc., and does not otherwise show that it was "due upon contract, express or implied." *Held*, sufficient under Tay. Stats., 1769-70, §§ 28, 33. *Blackwood v. Jones*, 27 Wis., 498, distinguished.

6. The affidavit for the attachment (under the act of 1862, as amended) showing that the petition for a lien upon the logs in dispute was duly *filed* in the office of the clerk of the circuit court of the proper county (viz., that in which the services were rendered, and in which the logs remained until seized on the attachment), it is not necessary to state that it was *recorded* in the office of the lumber inspector for the proper district; and *it seems* that such recording is not essential to the validity of the lien.

7. On reversing a judgment in replevin for the plaintiff, the value of the property not having been determined on the trial, and not being ascertainable from the record here, the cause is remanded for a new trial.

APPEAL from the Circuit Court for *Oconto* County.

Replevin, for a quantity of pine saw logs; complaint in the usual form. The defendant in his answer claims to be the owner and entitled to the possession of such logs, by virtue of a sale thereof to him by the sheriff of Oconto county, on an

execution, as hereinafter stated. Such proceedings were had under ch. 128, R. S., that the logs were delivered to the plaintiffs. The action was tried by the court without a jury, and the only evidence introduced by either party was an agreed statement of facts, in effect as follows:

On July 8th, 1872, and prior thereto, the plaintiffs were the owners and in possession of the logs in controversy. On that day one Brooks commenced an action before a justice of the peace against one McCaulley, by attachment, under ch. 154, Laws of 1862 (entitled " An act providing for a lien for labor and service upon logs and lumber in certain counties "), and the acts amendatory thereof (Tay. Stats., 1768); and the logs were seized by virtue of the attachment issued in that action.

The statute (Tay. Stats., 1769, § 28) requires an affidavit to be made and annexed to the attachment before execution of the writ. In the case just mentioned, the affidavit was as follows: " Watson Brooks, being duly sworn, on oath says, that he is the above plaintiff; that the above defendant is indebted to the plaintiff in a sum over $5.00, and in the sum of $90, over and above all setoffs; *that said indebtedness is due for labor and services done and performed by the plaintiff for the defendant, in and about cooking for men driving pine logs in Oconto county, Wisconsin,* between the 9th day of April, 1872, and the 24th day of May, 1872; and that said logs are now lying in the waters of the Oconto river and Peshtigo brook, *in Oconto county,* Wisconsin, and are marked as follows [here follows description of logs]; and that the plaintiff, on the 19th day of June, 1872, duly filed his statement, or petition under oath, for a lien on said logs, in the office of the clerk of the circuit court for the county of Oconto, Wis."

The complaint in the attachment suit alleges that Brooks, the plaintiff therein, performed labor for McCaulley, under a contract therein stated, from April 9th to May 24th, 1872, in the county of Oconto, " in and about cooking for men driving pine logs in Oconto county, Wis.;" that $90 of the agreed

wages remain unpaid; "that said logs whereon plaintiff performed the labor and services aforesaid are now in the waters of Oconto river and Peshtigo brook in Oconto county;" and that said Brooks "on the 19th day of June, 1872, duly filed his petition or statement for a lien on said logs in the office of the clerk of the circuit court for Oconto county, Wis."

McCaulley answered, admitting that Brooks worked for him, cooking for his men, as stated in the complaint, and took issue only on the amount due and unpaid for such work, which he admitted to be $48.65, for which sum he tendered Brooks a judgment.

On July 9th, 1872, the sheriff of Oconto county seized the logs in controversy in this action, by virtue of the writ of attachment issued in the action of *Brooks v. McCaulley.* After trial, and on the 9th of July, the justice rendered judgment for Brooks, for $82.86 and costs, and also found and adjudged that the labor for the price of which the judgment was rendered was performed on the logs mentioned in the complaint, and that the judgment was a lien thereon. The logs were duly sold by the sheriff on an execution issued upon such judgment, and the defendant in the present action was the purchaser at such sale.

It was further stipulated as follows: "That prior to the commencement of this action the plaintiffs demanded the logs in question; that the defendant only claims title and right of possession to the logs described in the complaint by virtue of the judgment in the case of *Brooks v. McCaulley,* and the subsequent proceedings thereon; that the only relation McCaulley held to the plaintiffs was that he had taken a contract of them to get out and drive the logs in the complaint mentioned, and was to receive an absolute amount therefor."

The court found the facts to be as stated in the agreed case, and rendered judgment "that the plaintiffs recover of the defendant the possession of the personal property de-

scribed in the complaint, and also that they recover six cents damages, together with the plaintiffs' costs and disbursements incurred in this action, taxed at $28.63, amounting in all to the sum of $28.69."

The defendant appealed from the judgment.

The cause was submitted by both sides on briefs.

*Hastings & Greene*, for appellant, argued, 1. That the constitutionality of ch. 154, Laws of 1862, was settled by the decision in *Munger v. Lenroot*, 32 Wis., 541. 2. That the plaintiff in the action of *Brooks v. McCaulley* was entitled to the lien there adjudged for his services as a cook for the men engaged in getting out and driving the logs (*Young v. French*, 35 Wis., 111; *Hill v. Newman*, 38 Pa. St., 151; *Tizzard v. Hughes*, 3 Phila., 261; *In re Hope Mining Co.*, 1 Sawyer, U. S., 710); and that it must be presumed in favor of the justice's judgment, that if a lien for services in cooking exists under *any* circumstances, the necessary circumstances were shown in that case. (Counsel argued at length that the rule established or intimated by the cases above cited is the just one.) 3. That the plaintiffs cannot attack the judicial sale made in that case on the ground that the facts did not authorize a lien. (1) The proceedings in such cases are *in rem* (*Munger v. Lenroot, supra;* Tay. Stats., 1771); the seizure of the logs is therefore notice to all the world. *Moore v. Spackman*, 12 S. & R., 287; *Green v. Van Buskirk*, 7 Wall., 139; *Ziegenhagan v. Doe*, 1 Ind., 174; *Williams v. Stewart*, 3 Wis., 773; 15 Ohio, 435. (2) The logs were attached in the lien proceedings July 9, 1872; were sold September 19, 1872, and plaintiffs did not commence this action until the 30th of the latter month. If they could not have appeared in justice's court in the action by Brooks, and contested the lien, they could have sued the officer and Brooks at any time between the seizure and the sale. Having remained silent for two months, are they not estopped from disputing the validity of the proceeding on the ground that the facts proven did not

constitute a lien? *Thompson v. Blanchard*, 4 Coms., 303; 27 Barb., 595.

*W. H. Webster*, for respondents:

1. In the action before the justice, the affidavit for the writ failed to state that the indebtedness therein mentioned was due upon contract. The writ was therefore void, and the justice had no jurisdiction to proceed *in rem*. *Blackwood v. Jones*, 27 Wis., 498. 2. The complaint in that action should have alleged the recording of the lien in the office of the lumber inspector of the proper district, or the filing of the lien with the proper sub-inspector. Sec. 16, ch. 154, Laws of 1862. It should also have shown affirmatively that the claimant's labor was performed in one of the counties in which the lien law applies (sec. 1, ch. 154, Laws of 1862); whereas it merely shows that the men for whom the cooking was done were at work in Oconto county, and does not show where the cooking itself was done. The rights of an absent third party being seriously involved, the lien claimant should be held to a strict compliance with the statute. The complaint is so defective that a judgment under it, so far as it operated upon the status of property, would be reversed by this court though every essential fact had been proven. *K—— v. H——*, 20 Wis., 239. 3. If the act be constitutional, it does not provide a lien in favor of one performing labor as a *cook;* and hence the legislature of 1874 amended the act so as to make it include such services. Ch. 267 of 1874. See the reasoning in *Munger v. Lenroot*, p. 546. 4. Plaintiff's title was not divested by the sale under the justice's judgment. If the justice had no jurisdiction, the sale conferred no title upon the purchaser. 2 How. (U. S.), 43; *Shelton v. Tiffin*, 6 id., 163; *Williamson v. Berry*, 8 id., 495; *Morris v. Hogle*, 37 Ill., 150; *Harshy v. Blackmarr*, 20 Iowa, 161. And even if the court had jurisdiction, if from any cause the sale was really void, the objection is good in a collateral proceeding. *Cooper v. Sunderland*, 3 Clarke (Iowa), 114; *Frazier v. Steenrod*, 7

Iowa, 346. But *Munger v. Lenroot* is decisive that plaintiffs are not estopped by the sale in question. See also *Hadson v. Tibbetts*, 16 Iowa, 97; *McGahen v. Carr*, 6 id., 331; *Broghill v. Lash*, 3 G. Greene, 357.

*Hastings & Greene*, in reply:

1. The affidavit for a lien is in the exact language of the statute under which such lien was claimed. Tay. Stats., 1768–70, §§ 25, 28, 33. 2. The lien is not required to be recorded in the lumber inspector's office. (1) The language of ch. 167 of 1864 as to such recording applies only to mortgages or other written instruments. (2) The law of 1864 in no way attempts to amend the lien law of 1862. The law of 1867 simply extends the provisions of the act of 1862, and *none other*, to Oconto county. 3. The allegation that plaintiff *duly* filed his petition or statement for a lien with the clerk of the circuit court for Oconto county, is sufficient. *Burdick v. Briggs*, 11 Wis., 126, 132. This allegation, not being denied *under oath* in the answer, is admittted. Tay. Stats., 1772, § 41. 4. The language of the law of 1862, and of sec. 1, ch. 267, Laws of 1874, so far as it prescribes what services shall constitute a lien, is identical. Subsequently said sec. 1 declares : " *The provisions of this section shall include* the labor and services of any cook," etc. This is a legislative construction of the language preceding; and so far as the law of 1874 is entitled to any weight in this argument, it confirms our construction of the act of 1862. But the present case is governed by the principle that the legislature cannot declare the intent of a prior law so far as it applies to cases arising before the explanatory act. Opinion of Dixon, C. J., in *Munger v. Lenroot*, pp. 556–7, and cases there cited; Cooley's Con. Lim., 92–94. *Young v. French*, 35 Wis., 111, was a judicial construction of the law of 1862.

Lyon, J. We adhere to the decision of this court in *Munger v. Lenroot*, 32 Wis., 541, and must therefore hold that the statutes under which the lien proceedings were had were

valid laws, although they did not require that the plaintiffs, who were the general owners of the logs in controversy, should be made parties to such proceedings; and further, that such proceedings are not invalid merely because they were not made parties thereto. But, on the authority of the same case, the plaintiffs may, in this action, contest the right of Brooks, the plaintiff in those proceedings, to enforce a lien against the logs. This they have done. If they have shown that he was not entitled to such lien, the title to the logs claimed by the defendant solely under the execution sale necessarily fails, and the plaintiffs are entitled to judgment.

The question whether Brooks was entitled to a lien upon the logs is to be determined upon the record of the proceedings before the justice; for by that record only is the validity of the lien judgment attacked. It may here be observed that such judgment is *prima facie* regular and correct, and must be held a valid judgment unless it appears affirmatively that it is not. To uphold it resort will be had to all reasonable presumptions consistent with the record. This rule is elementary, and its application to the case will dispose of some of the objections to the validity of the lien judgment urged on behalf of the plaintiffs. Other objections to the validity of such judgment, not disposed of by the rule just stated, will now be considered.

1. The services for which the lien judgment was rendered consisted in cooking food for the men engaged in driving the logs in controversy; and it is earnestly contended by the learned counsel for the plaintiffs, that the statute under which the lien proceedings were instituted gives no lien for such services. The statute (Tay. Stats., 1768, § 25) gives to any person "that shall furnish any supplies, or that may do or perform any labor or services in cutting, falling, hauling, driving, running, rafting, booming, cribbing or towing any logs or timber," in certain counties therein named, including Oconto county, a lien on such logs or timber "for the amount

due for such supplies, labor or services." In *Young v. French*, 35 Wis., 111, the opinion is expressed that one who cooks for the men at work on the logs directly, is entitled to a lien thereon for his wages under the statute. We have reviewed the question, and think the opinion there expressed is correct. It seems to us that the person who cooks the food for the men who fall the trees and work directly and immediately upon the logs or timber, performs service in cutting, falling, driving, etc., such logs or timber, within the meaning of the statute, equally with those who use the axe, the saw or the team to the same end. These are all engaged in the business of manufacturing trees into logs and timber, and transporting the same from the forest to a market; and to accomplish the common purpose the labor of each in his department is necessary. Moreover, he who cooks the food " furnishes supplies," equally with the person who furnishes the raw materials. The acts of both are essential to the supplying of the men with food, and both " furnish supplies," within the meaning of the statute. Both also render " services on logs or timber," within the meaning of the averment to that effect required in the affidavit to be annexed to the attachment. Tay. Stats., 1769, § 28.

The statute under consideration was enacted in the interests of labor, and a sound public policy requires that it be liberally construed. The construction contended for on behalf of the plaintiffs is too narrow, and, if adopted, would go far to defeat the objects and purposes of the statute. We cannot adopt it, but must hold that the claim of Brooks in the attachment suit was within the statute.

2. The next objection to the validity of the lien judgment is, that the affidavit annexed to the writ of attachment is fatally defective in that it is not set forth that the indebtedness therein mentioned was due upon contract, express or implied, and *Blackwood v. Jones*, 27 Wis., 498, is cited to support the objection. It is sufficient to say that *Blackwood v. Jones*

was a case commenced by attachment in a justice's court under the general attachment law applicable to such courts (R. S., ch. 120, sec. 99), and has no application to the proceedings before us. The statement of indebtedness in the affidavit in these proceedings seems to be in strict compliance with the statute. Tay. Stats., 1769–70, §§ 28, 33. We think the objection is not well taken.

3. The only other objection to the validity of the lien judgment necessary to be considered is, that neither the affidavit annexed to the attachment, nor the complaint in the attachment suit, shows that the lien claimed was recorded in the office of the lumber inspector for the proper lumber district. It is claimed on behalf of the plaintiffs that such record is made essential to the validity of the lien by sec. 12, ch. 167, Laws of 1864 (Tay. Stats., 757, § 19).

The statute of 1862, as amended, under which the attachment suit was brought, requires that a petition or statement of the lien shall be filed in the office of the clerk of the circuit court for the proper county, by a time therein specified; that the affidavit annexed to the attachment shall state that the plaintiff has filed such petition or statement; and that the plaintiff shall allege the filing thereof in his complaint. Tay. Stats., 1769, 1772, §§ 27, 28, 41. Beyond all question, the "proper county" in which to file the petition or statement in *Brooks v. McCaulley*, was the county of Oconto; for the services were rendered by Brooks in that county, and the logs remained therein until seized on the attachment. The allegations of the filing of the petition or statement of lien required to be inserted in the affidavit and complaint, clearly relate to the *filing* thereof in the office of the clerk of the circuit court, and not to the *recording* thereof in the office of the lumber inspector. In the proceedings before us we find a substantial compliance with the statute.

It is proper to add that we do not understand that the recording of a petition or statement of the statutory lien for

supplies or for labor and services on logs or lumber, in the office of the lumber inspector, is essential to the validity of such lien.

We conclude that the plaintiff failed successfully to impeach the lien judgment, and hence, that the defendant obtained a good title to the logs in controversy by his purchase thereof at the execution sale, and should have had judgment for a return of the logs or the value thereof, in case a return could not be had.

The judgment must therefore be reversed; but we cannot direct the proper judgment to be entered for the defendant, because the value of the logs was not ascertained on the trial, and cannot be ascertained from the testimony. Another trial is necessary to supply such defects in the proofs.

*By the Court.* — Judgment reversed, and a *venire de novo* awarded.