## STREUBEL VS. MILWAUKEE AND MISSISSIPPI RAILROAD COMPANY.

By an act of the legislature, which took effect in April, 1855, it was enacted that, "All railroad corporations within this state, shall be responsible and obligated in law to the laborers on the line or lines of railroads being constructed by said corporations, and are responsible and liable to pay for all labor performed by said laborers, severally, upon said road or roads, to the persons performing such labor * * * and for the purposes of this act, all the usual remedies by action are given to any and all such laborers against any such corporation. * * * No suit shall be maintained under the provisions of this act, until such laborer shall have given thirty days notice in writing to the president or secretary of such company, that wages are due him, and that the company is required to make payment for such wages so due, stating the amount claimed." This act was *repealed* by an act which took effect in March, 1857, and which enacted that, "Whenever any laborer upon any railroad in this state, shall have just claim or demand to the amount of twenty dollars or more, for labor performed on such railroad, against any person being contractor on such railroad with the railroad company for the construction of any part of the railroad of said company, such railroad company shall be liable to pay such laborer the amount of such claim, provided such laborer shall have given notice to such railroad company, within thirty days after such claim or demand shall have accrued that he has such claim or demand, and provided also, such claim or demand shall have accrued within sixty days prior to the giving of such notice, &c.:" *Held*, that a person who performed labor for a sub-contractor, upon one of said railroads, in the summer and fall of the year 1856, and in October of that year gave notice of his claim to such railroad company, as required by the act of 1855, acquired a vested right to recover from such company the wages of such labor, which the act of 1857 could not divest, and an action against the company, for such wages, though not commenced until after the act of 1857 took effect, could be maintained.

COLE, J., *dissenting*.

APPEAL from the circuit court for *Milwaukee* county.

The complaint in this action, which was filed in May, 1857, alleged that the plaintiff, *Streubel*, had performed labor to the amount of $536, on section 17 of the defendants' railroad, under the employment of a sub-contractor, who

June Term,
1860.

STREUBEL
v.
MIL. & MISS.
R.R. Co.

was engaged in constructing the same; that said labor was performed between the 22d day of April, 1856, and the 18th day of October following; that more than thirty days previous to the commencement of the action, he gave notice in writing to the president or secretary of said railroad company, stating that wages for work done by him as a laborer on the line of said road, were due him, and that said company were required to make payment therefor, stating also the amount of wages so due; that said sub-contractor and the defendant, had always refused to pay him said sum; wherefore, he demanded judgment, &c.

The defendant answered, denying that the plaintiff had performed labor on said road, and, for further answer, alleged that for all the labor done by the plaintiff on said road, he had been fully paid.

On the trial, the plaintiff proved the facts stated in his complaint. The counsel for the defendant, thereupon moved the court for a nonsuit, on the ground that the act of 1855, under which the plaintiff claimed to recover, was repealed by the act of 1857, and that there was no proof of such a notice to the company as the act of 1857 required; which motion the court overruled, on the ground that the service of the notice upon the company, before the passage of the act of 1857, gave the plaintiff a vested right, which subsequent legislation could not impair, to which ruling the defendant excepted. The defendant then proved that the sub-contractor on said section 17, had been fully paid.

The court, among other things, charged the jury: "That the notice to the defendant having been given before the passage of the act of 1857, made the right of the plaintiff to hold the defendant responsible for wages, a vested right, which no subsequent legislation could impair;" to which charge the defendant excepted.

The defendant asked the court to charge the jury as follows: "That the plaintiff has failed to make proof of such a case, as, under the law, entitles him to recover against the defendant, and that their verdict must be for the defendant;" which instruction the court refused to give, and the defendant excepted.

The defendant further asked the court to instruct the jury
as follows: "That the law of 1857, entitled 'an act further
to protect laborers on railways,' repeals the act entitled,
'an act for the protection of laborers on railroads,' ap-
proved March 31st, 1855, and that the plaintiff is seeking
to recover under the act of 1855, and the papers in the case
show that this suit was not commenced until after the act of
1857 had gone into effect, and that by virtue of the act of
1857, the plaintiff had shown no cause of action against the
defendants;" which instruction the court refused to give,
and the defendant excepted.

June Term,
1860.

STREUBEL
v.
MIL. & MISS.
R.R. Co.

The jury returned a verdict of $400 in favor of the plaintiff.

The defendant moved to set aside the verdict and for a
new trial, for the reasons, that the court erred in not grant-
ing a nonsuit; that the court erred in not giving the specific
instructions asked by the defendant; that the court erred in
charging the jury that the plaintiff, by serving the notice re-
quired by the act of 1855, acquired a vested right, which
no subsequent legislation could impair; and that the com-
plaint sets forth no cause of action; which motion the court
overruled, (the defendant excepting,) and rendered judgment
upon the verdict, from which the railroad company appealed.

*Finches, Lynde & Miller*, for appellant:

The act of 1855 only gave the laborer on railroads a rem-
edy which he did not have before; and it was competent
for the legislature to repeal the act, and cut off or destroy
the remedy. The constitutional power of a legislature to
enact a law which merely changes or destroys a remedy, is
well settled. It has been affirmed in a number of cases, and
under various circumstances, as follows: In a case where
the creditor, at the time of making the contract, had the
right to imprison the debtor, it has been held, that the reme-
dy might lawfully be abolished as to existing as well as fu-
ture contracts, absolutely or conditionally, by means of in-
solvent laws. *Sturges vs. Crowninshield*, 4 Wheat., 122, 200,
201; *Mason vs. Haile*, 12 id., 370; *Beers vs. Haughton*, 9 Pe-
ters, 329. So as to limitation laws; the legislature may
lawfully enact a statute limiting the time within which suits
may be brought to enforce demands, where there was before

no limitation. *Hawkins vs. Barney's lessees*, 5 Peters, 457 ; *Smith vs. Morrison*, 22 Pick., 430 ; *Call vs. Hagger*, 8 Mass., 423. So as to an act giving to an assignee the title to all the insolvent's property, *including any which might have been attached on mesne process.* The act was held to apply to a debt contracted before the passage of the act. " It divested the creditor, under certain circumstances, of his remedy by attachment, which existed in full force when the contract was made." *Bigelow vs. Pritchard*, 21 Pick., 169 ; 3 Denio, 274. So as to a law exempting property from sale on execution, which at the time of making the contract was not exempt. *Morse vs. Goold*, 1 Kernan, 281.

The respondent had no vested right. The *giving of the notice* did not of itself create any liability on the part of the appellant. The law, and not the notice given, fixed the liability. · The notice was required to be given simply as a *condition precedent* to the *bringing of the suit.* It did not make the claim of the respondent any more binding upon the company. Session Laws of 1855, p. 87.

*G. Von Deutch*, for respondent :

The statute of 1855 fixed the liability of the appellant. It is itself the obligation of the contract, and cannot be repealed so as to divest or impair rights acquired under it. *Bruce vs. Schuyler*, 4 Gilm., 221; *Sturges vs. Crowninshield*, 4 Wheat., 122, 197 ; *F. & M. Bank of Penn. vs. Smith*, 6 Wheat., 131; *Oriental Bank vs. Freeze*, 6 Shep., 109 ; *Lambertson vs. Hogan*, 2 Barr, 22.

The obligation of a contract is the law which binds the parties to perform their agreement. *Ogden vs. Saunders*, 12 Wheat., 213, 257. Chapter 27 of the laws of 1857, repealed the laws of 1855 referred to, at the same time enacting a substitute, in the main the same as the former act, adding, however, a condition precedent to the liability of the corporation, to wit : the service of the notice within thirty or sixty days (it is doubtful which) after the demand shall have accrued. It is insisted that the plaintiff should show a cause of action within the latter act, as it was in force before the suit was commenced. The absurdity of this position is apparent, as the act was passed four months after the demand

accrued, and requires notice to be given within, at most, June Term, sixty days after the demand accrued. It would require an 1860. act to be done a couple of months in the past. The law of Streubel 1857 would be clearly unconstitutional, if it were intended Mil. & Miss. to affect this case; but we hold it to be "a settled rule of R.R. Co. construction, that a statute should not have a retrospective operation, unless the intention to have it so operate, is clearly expressed." *Hastings vs. Lane*, 15 Maine, 134; *Oriental Bank vs. Freeze, supra; Dash vs. Van Kleeck*, 7 Johns., 477; 3 Dall., 391, 379; 2 Gallis., 139; *Briggs vs. Hubbard*, 19 Vt., 86.

*By the Court*, Dixon, C. J. Under the common law sys- June 19. tem of pleading and practice, this would have been denomi- nated an action of *assumpsit* for work and labor. It was commenced by the respondent against the appellant in the circuit court of Milwaukee county, in the month of May, 1857, to recover the price and value of work done by the respondent as a laborer, in the construction of the line of railroad of the appellant, in the year 1856, under the provis- ions of chap. 86, Laws of 1855, entitled "an act for the pro- tection of laborers on railroads." The respondent was em- ployed as such laborer by a sub-contractor of the appellant.

Before this action was commenced, viz: on the 28th day of February, 1857, the act above referred to, and under which the respondent performed his labor, was repealed by the third section of chap. 27, Laws of 1857, entitled "an act further to protect laborers on railroads." The act of 1855 was in the following words: "All railroad corporations within this state shall *be responsible and obligated in law* to the laborers on the line or lines of railroads being constructed by said corporations, *and are responsible and liable to pay for all labor performed by said laborers severally, upon said road or roads, to the persons performing such labor;* and it shall be the duty of said corporations, to require of all contractors and sub-contractors ample bond or other security, satisfactory to said corporations, conditioned that all laborers on said road or roads shall be first paid, before the estimates due said contract- ors or sub-contractors by said corporations, shall be paid by

said companies to said contractor or contractors, sub-contractor or sub-contractors, *and for the purposes of this act all the usual remedies by action are given to any and all such laborers against any such corporations.* No suit shall be maintained under the provisions of this act, until such laborer shall have given thirty days' notice, in writing, to the president or secretary of such company, that wages are due him, and that the company is required to make payment for such wages so due, stating the amount claimed." The act took effect and was in force from and after its passage. The act of 1857, by the third section of which the foregoing act was repealed, continued the liabilities of railroad companies to pay laborers for work performed on their roads, but provided that such companies should not be liable when the claim or demand of the laborer was less than twenty dollars; that the laborer should give notice to the company, within thirty days after his claim or demand should accrue, that he had such claim or demand; and that such claim or demand should have accrued within sixty days prior to the giving of such notice, which notice should be in writing, specifying the nature and amount of the claim, and be served on the secretary or chief engineer, &c. The notice required by the act of 1855, to be given to the president or secretary of the company, thirty days prior to the commencement of suit, was proved to have been given by the respondent in the month of October, 1856.

Upon the trial the circuit judge instructed the jury, "that the notice to the defendant having been given before the passage of the act of 1857, made the right of the plaintiff to hold the defendant responsible for wages, a vested right, which no subsequent legislation could impair. To this instruction the counsel for the appellant excepted. The counsel for the appellant likewise requested the court to instruct the jury, "that the law of 1857 repealed the law of 1855, and that the plaintiff was seeking to recover under the act of 1855, and that the papers in the case showed that the suit was not commenced until after the act of 1857 had gone into effect, and that, by virtue of the act of 1857, the plaintiff had shown no cause of action against the defendant." This instruction was refused, and the counsel for the appellant

excepted.   A verdict having been found for the respondent
for the amount of his claim, and judgment thereupon per-
fected against the company, they appealed to this court, for
the purpose of obtaining a review of the questions involved
in these exceptions.   The cause was argued at the January
term, 1859, and the judgment of the circuit court reversed.
At the June term, 1859, a motion for rehearing was made
and granted.   At this time a reargument was had, and it
now becomes our duty to express the views of a majority of
the court upon the questions presented.

The former decision of this court proceeds upon the idea
that the act of 1855 created, and gave to the laborer, a mere
remedy against the company, where by law none before ex-
isted; that it did not create or impose upon it any obliga-
tion, or give the laborer any right; and that inasmuch as all
mere matters of remedy are at all times subject to modifica-
tion and control by the legislature, its repeal took away such
remedy, and no action could thereafter be maintained.  With
the doctrines of the opinion there given, as to the power
of the legislature to regulate, modify, change, or repeal
remedies, we entirely concur, but we dissent at the very
threshold of the inquiry, as to the construction of the act
itself.  It is fairly to be implied from the reasons there
given, that if by virtue of the act and the subsequent trans-
actions of the parties under it, an obligation or duty was im-
posed upon the company to pay the respondent for his labor,
its subsequent repeal would not have affected his rights;
and yet not one word is said by way of showing that no
such obligation or duty, on the part of the company, ex-
isted or was created.  It was taken for granted that there
was none.   It is needless for us to enter into an argu-
ment, or to cite authorities to show that if, by the dealings
of the parties while the act was in force, the appellant be-
came obliged, in law, as upon a contract, to pay the respon-
dent for his labor, no subsequent legislation could impair
or defeat such obligation.   It seems to us that the inten-
tion of the legislature to create such obligation, could not
by any language have been more plainly and unmistake-
ably manifested.   The act declared, that *all railroad corpor-*

ations within this state should be responsible and obligated in law, to the laborers on the line or lines of railroads being constructed by said corporations, and were responsible and liable to pay for all labor performed by said laborers severally, upon said road or roads, to the persons performing such labor. It furthermore made it the duty of such corporations to secure themselves against such liability, by ample bonds or other securities from their contractors and sub-contractors. The act was prospective, and the power of the legislature, as to all future transactions, to regulate and control contracts, by prescribing the manner in which they shall be made, how they shall be evidenced, and by what forms and ceremonies they shall be solemnized, by declaring what future voluntary acts of parties, in relation to a particular subject matter, shall be deemed a contract, and, if it pleases, by creating implications from such acts, from which certain declared obligations shall flow, cannot be denied or doubted. Instances of the exercise of this legislative power are frequent. It was in the exercise of this power that the act in question was passed. After its passage, and while it was in full force, the appellant carried on the business of constructing its road, and, through the agency of contractors and sub-contractors, contracted with and employed laborers for that purpose. The laborers, through the same agency, contracted with the appellant to perform the labor, and having done so, were entitled to look directly to it for their pay. The appellant, by prosecuting its work, assented to the obligation imposed by law to pay the laborers their wages; and the laborers, relying upon such assent and obligation, performed their work. In this, as in all other cases where contracts are regulated by law, the parties are presumed to have acted with reference to it, to have consented to such conditions and duties as it imposed, and to have acquired such rights as it gave. Their acts are to be interpreted by it. The appellant, by letting its contracts and setting in motion the means by which laborers were employed, thereby agreed and promised to pay them. The laborers, by accepting such employment and doing the work, assented to such agreement and promise. Upon this point, the minds of the parties just as com-

June Term,
1860.

STREUBEL
v.
MIL. & MISS.
R.R. Co.

pletely and effectually met, constituting a contract, distinct and independent from that which existed between the laborer and his immediate employer, except so far as the price was concerned, as if they had reduced the agreement to writing, and witnessed it by signatures and seals. We are, therefore, of opinion, that the transaction was a contract between the parties, under which the right of the respondent to demand and recover his pay from the appellant, became vested, while the act was in force, and that the legislature could not, by its subsequent repeal, impair or divest them. It could, indeed, repeal the law; but it could not repeal the acts of the parties done under it, or destroy the rights of the respondent, acquired by virtue of such acts. They were past transactions, over which the legislature had no control.

It seems to us that the court, in its former decision, failed to discriminate between a right and a remedy. The refusal of the circuit judge to give the instruction asked by the appellant's counsel, is not referred to or commented upon at all. That portion of the charge in which the circuit judge told the jury, "that the notice to the defendant having been given before the passage of the act of 1857, made the right of the plaintiff to hold the defendant responsible for wages, a vested right," &c., is alone noticed, and arguments are used to show that the giving of this notice was a part of the remedy; and because it was, it was concluded that the act created or gave merely a new remedy, which went down with its repeal, and, therefore, the action could not be maintained. To the point that the giving of the notice was a part of the remedy and no part of the right, we fully assent. The circuit judge was undoubtedly in error, when he said that it was the giving of the notice which vested the right. The giving of the notice was one of the steps made necessary by the statute, towards the enforcement of the previously perfected obligation, by an action in a court of law. It was intended, no doubt, to enable the corporation, by having notice of the nature and extent of the claim, to adjust and pay it, without incurring the expense and trouble of litigation. It was a restriction upon the action or rem-

edy of the laborer, which the legislature could, and very properly did impose. The legislature foresaw that, without it, the company would be liable to suit at once, without warning as to the amount due, or an opportunity given for voluntary payment. It was the performance of the labor, under an agreement on the part of the company to pay, which gave the right and created the obligation, and these existed just as completely before the giving of the notice as afterwards. If, in an action brought by a laborer, while the act was in force, judgment had gone against him, because he had not given, or for the reason that he failed to prove the service of such notice, such judgment would have been no bar to a future action, commenced after he had given the requisite notice, or when he made the proof of service. Such neglect or failure could have gone only in abatement, which proves clearly, that the giving of the notice pertained to the remedy, and not to the right.

It seems to have been supposed that because the legislature, out of an excess of caution, after having declared that the corporation should be liable to pay for all labor to the persons performing the same, gave to such laborers all "the usual remedies by action," that the case is thereby taken out of the operation of the general rule, and that thereby the legislature had some superior or reserved power to strike down and annihilate the contracts of parties made under the act. We do not think this is so. The rights of the laborers, and their remedies to enforce them, would have been as complete without the clause giving "the usual remedies by action," as with it. The obligation to pay being established by the acts and contract of the parties, the courts of the state would have afforded the laborer a remedy for his damages in case of a breach, as well without as with this clause; and therefore its repeal took nothing away from, as its enactment added nothing to, his rights. He was thereafter at liberty to resort to his remedy as he would have done before, with this difference only, that its repeal removed the restriction of thirty days' notice before suit brought, which he need neither give, aver nor prove.

It is said in the former opinion, that "it is manifest that

the law of 1845 gave a laborer upon a railroad a right of ac-
tion against a company, where none would have existed at
common law.  In the ordinary and regular course of justice,
the laborer would have been compelled to bring his action
alone against the party employing him.  But this act, and
the subsequent one of 1857, enables a party to bring a suit,
under certain limitations, directly against the corporation,
*although in fact no contract, express or implied, exists between
him and such corporation.*  Notwithstanding this additional
remedy, the employee might still pursue the principal debt-
or, and enforce payment against him, if he saw proper.  This
new remedy is one given by the statute, and the legislature
could rightfully alter or modify this remedy, as might be
deemed expedient, without affecting any contract existing
between the parties."  Now, while it is true that the law
gave a new remedy, yet it did so by declaring that certain
future voluntary acts of the parties should be a contract, by
which they should be bound, and for the breach of which
courts of law would afford redress in damages.  This was
the only legitimate and constitutional method of giving the
remedy ; and we deny that the legislature can by act give a
*right* of action, when no contract, express or implied, exists
between the parties, except it be for a penalty or forfeiture
incurred after the passage of the law inflicting it; or by way
of garnishment or warning to a person having property in
his hands belonging to a defendant, which is in reality not a
*right* of action against the person warned, but a proceeding
against the property of the principal debtor in his possession,
and in no way affects his right or liabilities.  It is plain that
the obligations imposed upon the companies were not in the
nature of penalties or forfeitures, which would be swept
away by a repeal of the law.  Nor do they resemble the
proceeding of garnishment.  Their liability was not made to
depend upon the state of their accounts with their contract-
ors or sub-contractors, or upon the fact of their being indebt-
ed to them.  It was made their duty to indemnify them-
selves against such liabilities, by securities to be taken from
such contractors, and if they did not do so, it was their own
fault.  It was therefore necessary for the legislature to pro-

vide for the creation of the obligation by the consent of the parties, before it could give the remedy. The remedy follows the obligation, and gives damages for its violation. It is impossible to conceive of a remedy, in a case like the present, without the existence of the previously broken promise or agreement. The legislature cannot give a remedy against one person to compel him, against his will, to pay the debt of another. It could not give one against the company to compel it to pay the debt of its contractor. It gave the remedy to compel it to pay its own debt and perform its own promise. The fact that the contractors and sub-contractors were likewise holden to pay the laborers, made no difference. It frequently happens that two or more persons are severally bound for the payment of the same debt; and because they are so, the obligation as to any one of them is none the less sacred or binding, until it is discharged by payment. The creditor is at liberty to take as many securities as he pleases, and to resort to any or all of them until his debt is paid. If the act of 1855 had given a specific remedy upon the contract of the company, as *debt* or *covenant*, when by the common law the action would have been *assumpsit*, and the plaintiff, after its repeal, the common law as to remedies being still in force, had brought his action of *debt* or *covenant* instead of *assumpsit*, then we think it would have been a proper case for the application of the doctrines of the former opinion of this court, but now we are of opinion that it is not.

The instruction given containing no error for which the judgment ought to be reversed, and that requested by the counsel for the appellant having been properly refused, the judgment of the circuit court is affirmed.

[Mr. Justice COLE adhering to the opinion of the court, as delivered by him at the January term, 1859, it is here inserted by his direction, as his dissenting opinion.]

COLE, J.   The real question in this case is fairly presented by the following instruction, which was given to the jury, by the circuit court, and excepted to by the counsel for the company, to wit: "That the notice to the defendant, having

been given before the passage of the act of 1857, made the right of the plaintiff to hold the defendant responsible for wages, a vested right, which no subsequent legislation could impair."

The legislature, by chap. 86, Sess. Laws 1855, p. 87, provided, in substance, that all railroad companies within this state, should be obligated, in law, to pay laborers on the lines of railroad being constructed, wages which might be due from any contractor or sub-contractor, and the act gave laborers the usual remedies by action directly against the corporation. The act contained words of restriction, which declared that no suit should be maintained under its provisions until the laborer should have given thirty days' notice in writing to the president or secretary of the company, that wages were due him, and that the company was required to make payment of such wages so due, stating the amount claimed. By chapter 27 of the Sess. Laws of 1857, p. 32, the legislature repealed the aforesaid provision of the act of 1855, and provided in lieu thereof, that whenever any laborer upon any railroad in this state, should have a just claim to the amount of thirty dollars or more, for labor performed on such railroad, against any person being a contractor with the company for the construction of any part of the road, the company should be liable to pay such laborer the amount of such claim; provided the laborer gave notice to the company that he had such claim, within thirty days after the claim had accrued; and provided further, that the claim had accrued within sixty days prior to the giving of the notice.

This is the substance of the two acts which materially affect the correctness of the instruction given.

The action was not commenced until the law of 1857 had gone into effect, and hence it was contended in the circuit court, and the point is relied upon here, that though the work might have been performed, and the notice given, while the act of 1855 was in force, yet it was competent for the legislature to change, and it had, in fact, changed the remedy, before the suit was brought, and that therefore the respondent could not recover, unless his case should come

within the provisions of the former act. It appears to us that this argument is unanswerable.

It is manifest that the law of 1855 gave a laborer upon a railroad, a right of action against a company, where none would have existed at common law. In the ordinary and regular course of justice, the laborer would have been compelled to bring his action alone against the party employing him. But this act, and the subsequent one of 1857, enables a party to bring a suit, under certain limitations, directly against the corporation, although, in fact, no contract, express or implied, exists between him and such corporation. Notwithstanding this additional remedy, the employee might still pursue the principal debtor, and enforce payment against him, if he saw proper. This new remedy is one given by the statute, and the legislature could rightfully alter or modify this remedy, as might be deemed expedient, without affecting any contract existing between the parties. The circuit court held, that the notice having been given by the respondent before the passage of the act of 1857, that he should hold the company liable for his wages, a vested right accrued to him, which no subsequent legislation could impair. But, as we have remarked, the act of the legislature gave the laborer a remedy against the company—one which he would not have without the statute—and made it the condition of maintaining his suit, that he should, give a certain notice. The giving of the notice was a condition precedent to his bringing his action, but how could it create a vested right in the remedy? All the adjudged cases declare the principle, "that legal remedies are, in the fullest sense, under the rightful control of the legislatures of the several states, notwithstanding the provision in the federal constitution, securing the inviolability of contracts; and that it is not a valid objection to legislation on that subject, that the substituted remedy is less beneficial to the creditors than the one which obtained at the time the debt was contracted." *Morse vs. Goold*, 1 Kern, 281; *Bigelow vs. Pritchard*, 21 Pick., 169; *Walter vs. Bacon*, 8 Mass., 468; *Smith vs. Morrison*, 22 Pick., 430;

*Stocking vs. Hunt,* 3 Denio, 274, and the cases referred to in the above decisions.

We do not think the respondent had any vested right in the mere remedy given him by the law of 1855, and as he did not bring his suit until the act of 1857, altering, in some respects, this remedy, had gone into operation, he can only recover under the latter statute.

Judgment affirmed.