MALLORY and others, Respondents, vs. LA CROSSE ABATTOIR COMPANY, Appellant.

*September 3 — September 29, 1891.*

*Constitutional law: Liens of subcontractors.*

1. Sec. 3315, R. S., as amended by ch. 333, Laws of 1889 (giving to subcontractors a lien for the amount of their claims for labor performed or materials furnished in or about a building, without regard to the contract price for the building or the sum due from the owner to the principal contractor,— but providing that the principal contractor shall defend any suit to enforce such lien, and giving the owner a remedy over against him), is a valid law. [CASSODAY, J., dissents, being of the opinion that the act deprives the owner of his property without "due process of law," and denies to him "the equal protection of the laws," in violation of sec. 1, art. XIV, Amendm. Const. of U. S.]

2. A subcontractor, having furnished materials to be used (and which were used) in a building, may enforce his lien therefor, although he did not know of his right to such lien when he parted with his property.

3. The fact that materials to be used in a building in this state were sold and delivered in another state, does not impair the right to a lien, the statute containing no such restriction.

APPEAL from the Circuit Court for *La Crosse* County. In 1889 the defendant company erected a packing house

near the city of La Crosse. It contracted with the firm of Nicholas Bros., who were builders of boilers and iron-work in La Crosse, to deliver to it, free on board the cars at the works of the firm in La Crosse, a boiler, together with certain tanks, coolers, and vats to be used in such packing house. The same were so delivered and used, and were attached to said building so as to become a part of the freehold. The company paid the firm for the articles so furnished the full contract prices.

Nicholas Bros. purchased materials of the plaintiffs in Chicago to be used, and which were used, in the construc-tion of such boiler, tanks, etc., amounting to $1,767, about $917 of which sum remains unpaid. Within sixty days after furnishing such materials the plaintiffs gave notice to the defendant company that they claimed a subcontract-ors' lien on such building and the land upon which it was erected, for such balance. The plaintiffs also filed a claim for such lien in the proper office, and commenced this ac-tion to enforce the same within the times required by stat-ute.

The court found the above facts, and that the proceed-ings to enforce the lien were regular; also, that when they sold and furnished such materials to Nicholas Bros. the plaintiffs were ignorant that they were entitled to a lien on the property of defendant therefor, and that, when the defendant paid Nicholas Bros. for the articles purchased of that firm, it had no notice that the firm had purchased ma-terials of the plaintiffs as above stated. Upon these facts the court gave judgment for plaintiffs enforcing a lien upon defendant's property, as claimed, for the unpaid balance due the plaintiffs from Nicholas Bros., and interest thereon, together with the costs of the action. Defendant appeals from the judgment.

For the appellant there was a brief by *Losey & Woodward*, and oral argument by *G. M. Woodward*. They contended,

*inter alia*, that there was no evidence to justify a finding that Nicholas Brothers furnished the articles upon an understanding that they were to go into this building or into any building whatever. *Esslinger v. Huebner*, 22 Wis. 632; Jones, Liens, secs. 1329, 1330. And the finding that the materials were sold and delivered by the plaintiffs to Nicholas Brothers to be used in the contruction and equipment of defendant's building is not sustained by the evidence. The plaintiffs, having no knowledge of the building and being ignorant of any right to a lien when the sale was made, cannot be entitled to this judgment against the defendant. *Poole v. Union Pass. R. Co.* 16 Atl. Rep. (Pa.), 736. Ch. 333, Laws of 1889, is not a valid enactment. *Munger v. Lenroot*, 32 Wis. 550; *Myer v. Berlandi*, 39 Minn. 438, 446; *Hall v. Banks*, 79 Wis. 229; *John Spry Lumber Co. v. S. S. B. L. & T. Co.* 77 Mich. 199; Cooley, Con. Lim. 36, 37, 174, 353, 385; *Osborn v. Hart*, 24 Wis. 89; Sedgwick, Const. of Stat. & Con. Law, 128 *n;* *Bardwell v. Collins*, 44 Minn. 97, 102; *Munn v. Illinois*, 94 U. S. 113, 124; *Thorp v. R. & B. R. Co.* 27 Vt. 140, 143, 153; *Dibrell v. Morris*, 15 S. W. Rep. (Tenn.), 87, 90; *In re Jacobs*, 98 N. Y. 98; *People v. Marx*, 99 id. 377; *Henry v. Rice*, 18 Mo. App. 497; *Stewart v. Wright*, 52 Iowa, 335. If that law is upheld, the plaintiffs are not entitled to a lien under it. The contract between them and Nicholas Brothers was made in Illinois, and the goods were unconditionally delivered in that state, upon express agreement that payment was to be made there. *Stout v. Sawyer*, 37 Mich. 313; *Birmingham Iron Foundry v. Glen Cove S. M. Co.* 78 N. Y. 30.

For the respondents there was a brief by *Crosby & Gordon*, and oral argument by *W. L. Crosby*. They argued, among other things, that the courts cannot require other conditions for a lien than those prescribed in the statute. *Encking v. Simmons*, 28 Wis. 272; *Chase v. Whiting*, 30 id. 544; *Purtell v. Chicago F. & B. Co.* 74 id. 132. The fact

that the plaintiff made the contract with Nicholas Brothers and delivered the material to them in Chicago does not affect their right to a lien. *Gaty v. Casey*, 15 Ill. 189; *St. Louis Bridge & Const. Co. v. Memphis, C. & N. W. R. Co.* 72 Mo. 664; *Fagan v. Boyle I. M. Co.* 65 Tex. 324, 333. Ch. 333, Laws of 1889, became a part of all the contracts, and the defendant therefore agreed with Nicholas Brothers that all subcontractors who should comply with the law should have liens upon the building and the land for the amount of their claims. *Streubel v. M. & M. R. Co.* 12 Wis. 67, 74; *Smith v. Cleveland*, 17 id. 556, 568; *Gurney v. Walsham*, 16 R. I. 698. The principle of that law has been frequently passed upon by the courts, and (except in Michigan) the constitutionality of the law has been affirmed wherever the question has been raised. *Colter v. Frese*, 45 Ind. 96; *Merritt v. Pearson*, 58 id. 385; *Crawfordsville v. Johnson*, 51 id. 397; *Andis v. Davis*, 63 id. 17; *Delahay v. Goldie*, 17 Kan. 263; *Clough v. McDonald*, 18 id. 114; *Shellabarger v. Thayer*, 15 id. 619; *Sodini v. Winter*, 32 Md. 130; *Trensch v. Shryock*, 51 id. 162, 173; *Henry & Coatsworth Co. v. Evans*, 97 Mo. 47; *Laird v. Moonan*, 32 Minn. 358, 362; *Bardwell v. Mann*, 46 Minn. 285; *Donahy v. Clapp*, 12 Cush. 440; *Ballou v. Black*, 21 Neb. 131; *S. C.* 17 id. 389; *White v. Miller*, 18 Pa. St. 52, 54; *Roanoke L. & Imp. Co. v. Karn*, 80 Va. 589; *Roanoke L. & Imp. Co. v. Snead*, id. 589; *S. V. R. R. Co. v. Miller*, id. 821, 831; *N. W. R. Co. v. Howison*, 81 id. 125, 129; Jones, Liens, secs. 1304, 1305; *Munger v. Lenroot*, 32 Wis. 541. In the construction of the statute, nothing in conflict with the constitution can be imported into it. It must be construed in such a way as to give it force rather than to nullify it. Cooley, Con. Lim. 184; *Kerrigan v. Force*, 68 N. Y. 381; *Sage v. Brooklyn*, 89 id. 190, 196; *Ogden v. Saunders*, 12 Wheat. 270; *Palms v. Shawano Co.* 61 Wis. 211, 217; *State ex rel. Grundt v. Abert*, 32 id. 403, 406; *Schroeder v. Galland*, 134 Pa. St. 277.

LYON, J.   We think the testimony sustains the finding of the court to the effect that Nicholas Bros. furnished the boiler and other fixtures for the abattoir of the defendant company as a principal contractor with that company, and that the plaintiffs furnished the materials in question therefor under a subcontract with Nicholas Bros. We also think it quite immaterial that plaintiffs did not know, when they furnished such materials, that they were entitled to a lien for the unpaid price thereof upon the property of the defendant.   Being subcontractors under Nicholas Bros., and having furnished the materials to be used (and which were used) in defendant's building, they may avail themselves of all valid statutory remedies to enforce payment for such materials, whether they knew or did not know the extent of those remedies when they parted with their property. We are further of the opinion that the rights of the plaintiffs to enforce the lien claimed is not impaired or destroyed by the fact that they sold and delivered such materials in another state.   The statute is general, and does not restrict the right of lien to cases where the materials are sold and delivered in this state.   The case of *Birmingham Iron Foundry v. Glen Cove Starch Mfg. Co.* 78 N. Y. 30, which is relied upon to sustain a contrary doctrine, was decided under a statute more restrictive in its terms than ours, and for that reason the case is not a guide to correct judgment in the present case.

The testimony and findings of fact bring the case within the provisions of sec. 3315, R. S., as amended by ch. 333, Laws of 1889 (S. & B. Ann. Stats. sec. 3315).   If, therefore, the amended section 3315 is a valid law, the plaintiffs are entitled to the lien which the judgment gives them.   Hence the controlling question in the case is whether the amended section is or is not a valid law.

Under the lien laws as they existed before the enactment of ch. 333, Laws of 1889, the property upon which a lien was

claimed by a subcontractor could only be held liable to the amount of the owner's indebtedness to the principal contractor at the time notice of the claim for the lien was served upon such owner, or which might thereafter accrue. There was an exception in the statute to the effect that if the contract price was unreasonably low the property should be charged in an amount equal to the fair value of the labor and material used in the building or improvement thereon.   Sec. 3315, R. S.   Such was the statute until the enactment of ch. 333 of 1889.   That act attempts to sweep away the restrictions upon the liability of the owner of the property to a subcontractor.   As is said in *Hall v. Banks,* 79 Wis. 229, " That chapter repeals the above restriction upon the liability of the owner, and makes him absolutely liable to subcontractors who comply with the requirements thereof, for the amount of their claims, without regard to the contract price for the building, or the sum the owner may be indebted to the contractor when notice of the contractor's claim for a lien is served, or at any other time."   The amended section contains the further provision that the principal contractor shall, at his own expense, defend any suit brought to enforce a subcontractor's lien; that the owner of the property may withhold from the principal contractor the amount for which such lien is filed; and that if judgment is recovered enforcing the lien, and the owner shall have settled with the principal contractor in full, such owner " shall be entitled to recover back from the principal contractor any amount so paid by the owner for which the principal contractor was originally liable."

The theory of the law giving to laborers and materialmen specific liens upon the property upon which their labor was performed or their materials used, seems to be that, because the value of such property has been enhanced thereby, it is just that the property should be specifically

charged with the sums expended thereon for those purposes. The reason of the law extends to expenditures on the property by subcontractors as well as by those who contract directly with the owner. The only difference is that in the latter case individual liability of the owner is added.

When the statute restricted the lien of a subcontractor to the amount which the owner of the property owed the principal contractor when the claim for a lien was served upon such owner, and to any indebtedness of the owner to such principal contractor accruing after such service, there was no room to question its perfect fairness and justice to the owner of the property sought to be charged with the lien. But when these restrictions for the protection of the owner were swept away, and his property subjected to a lien charge for the amount of any claim of a subcontractor against the principal contractor for labor or material used in the building or improvement, without regard to the state of the account between such principal contractor and the owner, it must be conceded that there is much room to question the reasonableness and justice of the statute which thus adds to the responsibility of the owner. But statutes which the courts may think are opposed to a sound public policy, or which may operate unjustly in certain cases, may not always be invalid. Before they can be so declared, it must clearly appear that they violate some fundamental principle of constitutional law. Is any such principle violated by the amended sec. 3315?

True, that section may operate to charge a lien upon property for the claim of a subcontractor which the owner of the property never agreed to pay, and which is in excess of the sum which he agreed to pay the principal contractor for the improvement which is the basis of the lien. Were this all of the statute, its injustice would be obvious. But the statute contains the further provisions above mentioned, the effect of which is to make the owner merely the surety

of the principal contractor for the payment of his indebted-
ness to a subcontractor for work performed upon or ma-
terials furnished for the improvement.  If a subcontractor's
lien is enforced by judgment under the statute, and the
judgment is collected by a sale of the property, or paid by
the owner to save his property, the statute gives such
owner a remedy by action against the principal contractor
for all sums so paid by the owner in excess of the amount
unpaid the principal contractor on the contract price for
the improvement.

It was entirely competent, no doubt, for the defendant
company, in the absence of any statute on the subject, to
bind itself, not only to pay Nicholas Bros. a stipulated price
for the fixtures purchased of that firm, but also to bind
itself to stand as surety of the firm for the payment of its
indebtedness to a subcontractor for materials furnished to
be used in the manufacture of the purchased articles.  In-
stead of contracting in that form, the defendant agreed to
pay Nicholas Bros. a certain sum for those articles; and
the statute adds to the contract the incident — writes in it,
so to speak, the stipulation — that the defendant shall
thereby become such surety, but at the same time giving
it a remedy by action against Nicholas Bros. to recover any
sum it has been compelled to pay beyond its indebtedness
to that firm.

It was said by Dixon, C. J., in *Streubel v. Mil. & Miss.
R. Co.*, 12 Wis. 67, that "the power of the legislature, as to
all future transactions, to regulate and control contracts by
prescribing the manner in which they shall be made, . . .
by declaring what future voluntary acts of parties in re-
lation to a particular subject-matter shall be deemed a con-
tract, and, if it pleases, by creating implications from such
acts from which certain declared obligations shall flow,
cannot be denied or doubted."  The learned counsel for de-
fendant, in his very able and discriminating argument, chal-

lenges the soundness of this proposition. It may be con-
ceded for the purposes of this appeal that, as claimed by
counsel, the language of the chief justice above quoted is too
broad, and that the power of the legislature to attach bind-
ing incidents and obligations to certain contracts is limited
to cases wherein the statute which attaches the obligation
at the same time gives to the party upon whom it is laid
adequate means of protection against the consequences of
it. Still, it does not follow that the amended section 3315
is invalid. The defendant entered into the contract with
Nicholas Bros. voluntarily, and with knowledge that its
property thereby became liable (if the statute is valid), to
be charged with liens for demands of subcontractors. If so
charged, the same statute protected the defendant by giv-
ing it an action against Nicholas Bros. for any sum it might
be compelled to pay to release its property from such lien
beyond its indebtedness to that firm. The defendant might
have required security of Nicholas Bros. against claims of
subcontractors, or it was free to trust to the pecuniary re-
sponsibility of the firm. The statute says to the defend-
ant: " By contracting with Nicholas Bros. to manufacture
the fixtures for your abattoir, you gave credit to that firm,
the same as though you had made it your partner or agent;
and you ought to protect persons who deal with the firm
on the faith of its contract with you, and whose labor and
materials go to enhance the value of your property, and
you must protect them, by standing as surety for your
principal contractor to the extent of the value of such prop-
erty. At the same time, if you are required to pay more
to protect your property than you owe Nicholas Bros., you
may recover it of that firm by action." It seems to us that
the statute gives adequate means of protection against the
obligation which it imposes on defendant; that it is based
upon a recognized equitable principle; and hence that it is
not justly liable to the criticisms of counsel upon it.

But, were the question of the validity of the statute under consideration a more doubtful one than we regard it, we should still be compelled to uphold its validity on the ground that statutes involving the same principles, and subject to the same objections urged against the validity of the amended section 3315, have frequently been upheld by this court. Such was the statute (ch. 154, Laws of 1862), the validity of which was adjudged in *Munger v. Lenroot,* 32 Wis. 541. This statute gave an absolute lien on logs for the value of labor performed upon them, although the owner of the logs was not a party to the contract for such labor, and the procedure prescribed to enforce the lien did not require any notice of the claim therefor to be given such owner, or that he be made a party to the action to enforce the lien. Chiefly because of such defects in the procedure, Chief Justice Dixon dissented from the judgment of the court. But those defects are remedied by the present lien laws. It is safe to say that every ground of objection which can reasonably be urged against the validity of the amended section 3315 existed to the statute the validity of which was upheld in *Munger v. Lenroot.* That case was decided in 1873. Two years later in *Winslow v. Urquhart,* 39 Wis. 260, the decision in *Munger v. Lenroot* was adhered to and expressly reaffirmed by the unanimous judgment of this court. Moreover, in *Streubel v. Mil. & Miss. R. Co.* 12 Wis. 67, above referred to, the same rules were held, and a statute making railroad companies absolutely liable for the wages of all persons performing labor upon the roads of such companies, no matter by whom such persons were employed, was held valid. That statute also is subject to every objection which can reasonably be urged against the amended section 3315. The latter case was decided in 1860. The rule of the above cases has since been applied in numerous cases without challenge, and has long been firmly established in this state.

Were we now to hold the amended section 3315 invalid, we should practically overrule all the above cases. This should not be done except for most persuasive reasons,— perhaps should not be done under any circumstances; for it is highly probable that rights of property have been acquired on the faith of those decisions, in which case the maxim *stare decisis* ought to be applied.

Many decisions of courts elsewhere for and against the validity of statutes somewhat similar to the statute under consideration have been cited and much discussed by the respective counsel. These decisions seem to be in conflict, although perhaps a critical examination of the statutes upon which they are founded might suggest a method of reconciling them with each other. Lien statutes of the different states differ greatly in their provisions. Our statute in many particulars is quite unlike that of any other state. Hence the adjudications in other states upon the statutes of those states are not controlling — frequently not valuable — in determining the validity of our statute. For these reasons, and because our judgment herein is based largely upon former adjudications of this court which we are not at liberty to overrule or disturb, we deem it unnecessary to discuss the cases in other states cited by counsel.

*By the Court.*— The judgment of the circuit court must be affirmed.


CASSODAY, J. The question presented is whether the defendant, after having fully paid Nicholas Bros. the whole of the contract price, without any notice of any claim against them by the plaintiffs or any one else, is still bound to pay to the plaintiffs, as subcontractors, the sum of $917.38 and interest. If such claim can be maintained, then upon the same principle the defendant would have been bound to pay such claim even had the contract required the defendant to pay in advance, and the amount

had been so paid in full; or, even after such payment in advance, had Nicholas Bros. sublet the whole job, then the defendant would have been obliged to pay over again for all material and labor that went into the job, even though it greatly exceeded the contract price. If such a claim can be maintained, then upon the same principle the legislature could make every purchaser of goods from a retail dealer, even for cash down, liable for any balance due thereon to the wholesale dealer. It is in effect conceded that no one can defend any such claim upon ethical grounds. The contention seems to be that the legislature had the power to disregard all ethical considerations, and make the defendant and every other land-owner absolutely liable for all material and labor going into any structure upon his land, regardless of whether he pays the contract price in advance, or subsequently and before notice of any claim in favor of any subcontractor, and that the legislature has done so by ch. 333, Laws of 1889, which only requires notice to the owner or his agent " within sixty days after performing such work or labor or furnishing such materials."

I frankly concede that, if the enactment was within the power of the legislature, then the courts are bound to enforce it, regardless of their notions of its wisdom. It is, moreover, very obvious that the act did not impair the obligations of the defendant's contract, since the contract was made subsequent to the time when the act went into effect.

To my mind the act is repugnant to that provision of the constitution of the United States which declares that " no state shall . . . deprive any person of life, liberty, or *property* without due process of law, nor deny to any person within its jurisdiction *the equal protection of the laws.*" Sec. 1, art. XIV, Amendm. That provision was ordained and established for the very purpose of taking away from every state and its legislature every one of the powers thus prohibited. *Streubel v. Mil. & Miss. R. Co.* 12 Wis. 67, cited

in the opinion of the majority of the court, was decided long before that constitutional provision was adopted, and of course has no bearing upon the binding force of that provision. The case of *Munger v. Lenroot*, 32 Wis. 541, was decided subsequently to the adoption of that provision, but neither the opinion of the court nor the dissenting opinion therein make any reference to it, and hence it must be assumed that it was not considered. The same is true in regard to *Winslow v. Urquhart*, 39 Wis. 260, and other cases referred to in the majority opinion. Those cases are entitled to be regarded as authority upon the questions of construction therein determined, but it seems to me they are not entitled to such weight as against the provision of the federal constitution quoted, which after all must be regarded as the supreme law of the land, anything in any state constitution or statute, or the decision of any state court, to the contrary notwithstanding. Art. VI, Const. of U. S. Besides, the question whether such legislation is repugnant to the constitutional provision quoted is one upon which the supreme court of the United States is the final arbiter, and hence, until determined by that court, the question would seem to be open to the expression of opinion. That court has never passed upon the precise question here presented.

The act enables the contractor to limit his own duties, obligations, and liabilities by contract, and at the same time enables him, through the agency of a subcontractor, to bind the owner, without limitation, for all materials and labor that go into the structure. The subcontractor is not even limited to the specifications contained in the original contract, for by the terms of the act he may compel the owner to pay for what he never contracted for. It not only makes the owner, without his consent, responsible for the contractor's contracts with subcontractors, but also for his frauds. It authorizes the subcontractor to compel the owner

to pay the contractor's debts after he has, without notice of any adverse claim, paid to the contractor the whole contract price to enable him to pay his own debts. It does not in terms prohibit the owner from paying in advance or paying without notice, but precludes him, as against a subcontractor, from the benefit of such payment. It authorizes the contractor, after the making of the contract, to do what the legislature could not then do; that is, to change the terms of his contract without the consent of the owner, and hence to impair its obligations.

Such legislation is a recent invention. It seems to belong to that class which Herbert Spencer had in mind when, according to a recent interview, he said: "Since I began to write, there has been a clear reaction against individual liberty. We are certainly tending towards state socialism, which will be a worse form of tyranny than that of any government now recognized in civilization." If we have no constitutional barriers against such legislation, then Mr. Spencer's opinion, that such reaction and tendency endanger the American states as well as the European, would seem to rest upon a solid basis, instead of being mere speculation, as might otherwise be supposed.

It seems to me that a man cannot reasonably be said to have due process of law, and equal protection of the laws, under an act which enables his contractor to bind him conclusively without his consent or knowledge and contrary to the express terms of their written contract, and merely permits him, when sued thereon, to answer to the effect that by the terms of the act he has become so bound and was unable to prevent it. On the contrary, before any conclusive statutory liability should be imposed upon any person, he should be guilty of some tort, or give his consent, or be in default, or have such notice as would enable him to protect himself against gross injustice, otherwise the creation of such liability is an arbitrary and unjustifiable imposition.

Mallory and others vs. La Crosse Abattoir Co.

By this provision of the constitution it was "undoubtedly intended," said Justices FIELD and BRADLEY, each speaking for the whole court, "not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all, under like circumstances, in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, *the preservation and redress of wrongs, and the enforcement of contracts;* that no impediment should be interposed to the pursuits of any one, except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition." *Barbier v. Connolly,* 113 U. S. 31; *Bell's Gap R. Co. v. Pennsylvania,* 134 U. S. 238. "Clear and hostile discrimination against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition." 134 U. S. 237.

So it has been said by Justices BRADLEY and MATTHEWS, each speaking for the whole court, that, "in judging what is due process of law, respect must be had to the cause and object of the taking,— whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, *or none of these;* and, if found to be suitable or admissible in the special case, it will be adjudged to be 'due process of law;' *but if found to be arbitrary, oppressive, and unjust, it may be declared to be not 'due process of law.'*" *Davidson v. New Orleans,* 96 U. S. 107; *Kentucky Railroad Tax Cases,* 115 U. S. 331. In *Chicago, M. & St. P. R. Co. v. Minnesota,* 134 U. S. 418, the act of the legislature gave to the commission therein

prescribed the final and exclusive authority to determine and fix what should be regarded as equal and reasonable rates of charges for the transportation of property, and the act was held to deprive the company of its property without due process of law, and to deprive it of the equal protection of the laws, and accordingly reversed the supreme court of Minnesota, holding to the contrary. *State ex rel. R. & W. Comm. v. C., M. & St. P. R. Co.* 38 Minn. 281. To the same effect is *Minneapolis & E. R. Co. v. Minnesota,* 134 U. S. 467. Such imposition, through the agency of a public commission and fixed and public rates, upon any railway company entering into a contract for such transportation, was far less objectionable than to authorize a contractor, through the agency of a stranger and in secret, to impose such an arbitrary, unjust, and absolute liability upon the land-owner without his knowledge or consent or any certain means of ascertaining the fact until sixty days after the completion of the work or the furnishing of the materials.

A statute similar to the one in question was held void in *Spry Lumber Co. v. Sault Sav. Bank Loan & Trust Co.* 77 Mich. 199. In the opinion of the court in that case, by the late and learned Chief Justice CAMPBELL, it is said: " It strikes at the foundations of all property in land. There is no constitutional way for divesting a man's title except by his own act or default. Here his own act is not required, and his freedom from default is no defense. He may pay in full, in advance or otherwise, for all he has contracted for. He may contract for a house built in a certain way and of certain materials, and may have to pay for what he never bargained for and what his building contractor had no right to put off upon him. The original contract plays no part in the matter, except as a fact which binds no one and has no significance. Such a gross perversion of all the essential rights of property is so plain that no explanation

can make it plainer." In a recent case in Pennsylvania it has been held that a subcontractor is chargeable with notice of all the terms and stipulations of the contract between the owner and the principal contractor, and is bound thereby, since his only connection with such owner is through and by means of such contract. *Schroeder v. Galland*, 134 Pa. St. 277. To authorize A., through the agency of a subcontractor, to impose an arbitrary, unjust, and absolute liability upon B., without his default, and contrary to the express stipulations in the written agreement between them, and without any notice that will enable him to protect himself against such liability, and without his violating any statute or any law, or committing any tort or wrong, is, certainly, to deprive B. of his property or rights of property without due process of law, and to deprive him of the equal protection of the laws. *King v. Hayes*, 80 Me. 206; *Ulman v. Mayor*, 72 Md. 587; *Garvin v. Daussman*, 114 Ind. 429; *Oregon R. & N. Co. v. Smalley*, 1 Wash. 206.

It is true the opinion of the majority of the court is supported, not only by the decisions of this court therein cited, but also of other state courts of high standing, the latest of which is by the supreme court of Tennessee, in a case not cited by counsel. *Cole Mfg. Co. v. Falls*, 16 S. W. Rep. (Tenn.), 1045. But such cases either fail to meet the objection upon which this dissent is based, or, meeting it, fail to give any satisfactory reason for excluding such statutes from the prohibitions mentioned. It may be that the supreme court of the United States will eventually sanction such legislation, but until they do so I am forced to withhold my assent.