Burket, J.
The constitutionality of the amendment of the Mechanic’s Lien Law.as passed April 23rd, 1894, 91 O. L. 135, is challenged in each of the cases. In the first case payment was made under the contract in full before the work was done; in the second case payment was made under the contract as the work progressed, and a final payment in full upon the completion and acceptance of the building, and before any mechanic’s lien was filed, or notice given the owner. The section of the statute under which a right to a lien in these cases is claimed is as follows:
“Section 3184. A person who performs labor, or furnishes machinery or material for constructing, altering or repairing- a boat, vessel or other watercraft, or for erecting, altering, repairing or removing a house, mill, manufactory, or any furnace or furnace material therein, or other building, appurtenance, fixture, bridge,, or other structure, or for the digging, drilling, plumbing, boring, operating, completing or repairing of any gas well, oil well or any other well, or performs labor of any *439 kind whatsoever, in altering, repairing or constructing any oil derrick, oil tank, oil or gas pipe line, or furnishes tile for the drainage of any lot .or land by virtue of a contract with or at the instance of the owner therefore or his agent, trustee, contractor or sub-contractor shaLl have a lien to secure the payment of the same upon such boat, vessel, or other water-craft, or upon such house, mill, manufactory or other building or appurtenance, fixture, bridge or other structure, or upon such gas well, oil well, or any other well, or upon such oil-derrick, oil tank, oil or gas pipe line, and upon the material and machinery so furnished, and upon the interest, leasehold or otherwise, of the owner in the lot for and on which the same may stand, or to which it may be removed.”
The former statute on this subject provided that a lien might be taken by a person who should perform labor or furnish machinery or material by virtue of a contract with the owner or his authorized agent; while the statute here in'question provides that such lien may be taken by any person who performs labor or furnishes machinery or material, or tile for drainage, by virtue of a contract with, or at the instance of the owner or his agent, trustee, contractor or sub-contractor.
It is claimed by those opposing the statute, that in so far as it undertakes to give a lien on the owner’s property for labor, machinery, materials or tile not supplied under any contract with him, or with his agent, and not at the instance of either, it is unconstitutional.
On part of those who are upholding the statute, it is claimed that the statute is constitutional, and that by operation of law its terms become woven into the contract between the owner and *440 the contractor, and that the owner having thereby-agreed to pay the debts made by the contractor in completing the building-, has no cause for complaint.
As to which claim is right must be determined by the constitution, aided by general rules of law.
The preamble to the constitution is as follows: “We, the people of the state of Ohio, grateful to Almighty God for our freedom, to secure its blessings and promote our common welfare do establish this constitution.” It is worthy of notice that the constitution is established to secure the blessings of freedom, and to promote the common welfare. As the constitution must be regarded as consistent with itself throughout, it must be presumed that the laws to be passed by the general assembly under the powers conferred by that instrument, are to be such as shall secure the blessings of freedom and promote our common welfare.
To make this more emphatic, the first section of the Bill of Rights provides that, “All men are, by nature, free and independant, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and seeking and obtaining happiness and safety.” And by the second section it is provided that “All political power is inherent in the people. Government is instituted for their equal protection and benefit. ”
The usual and most frequent means of acquiring- property is bjr contract, and one of the most valuable and sacred right' is the right to make and enforce contracts. The obligation of a contract when made and entered into, cannot be impaired by act of the general assembly. Article 2, section 28.
*441 The word “liberty,” as used in the first section of the Bill of Rights does not mean a mere freedom from physical restraint or state of slavery, but is deemed to embrace the right of man to be free in the enjoyment of the faculties with which he has been endowed by his Creator, subject only to such restraints as are necessary for the common welfare. People v. Marks, 99 N. Y., 377; 52 Am. R., 34; Bertholf v. O'Reilly, 74 N. Y., 15; 30 Am. R., 323; Matter of Jacobs, 98 N. Y., 98; 50 Am. R., 636.
Contracts and compacts have been entered into between men, tribes and nations during all time from the earliest dawn of history, and the right and liberty of contract is one of the inalienable rights of man, fully secured and protected by our constitution, and it may be restrained only in so far as it is necessary for the common.welfare, and the equal protection and benefit of the people. That such restraint of the right and liberty of contract is for the common public welfare, and equal protection and benefit of the people must appear, not only to the general assembly, by force of popular clamor, or the pressure of the lobby, but also to the courts, and it must be so clear, that a court of justice in the calm deliberation of its judgment, may be able to see that such restraint is for the common welfare and equal protection and benefit of the people. People v. Gillison, 109 N. Y., 389; 4 Am. S. Rep., 465.
The statute in restraint of the liberty to contract as to interest on money, is valid for the reason that all can see that it is for the common welfare.
Many other like cases of restraint as to contracts are to be found in our statutes, but all of *442 them, in so far as they are valid, depend for their validity upon the same principle. It was the infringement of the liberty of contract that induced this court in State v. Lake Erie Iron Co., unreported, to hold the statute unconstitutional which required corporations to pay their employees at least twice in each month. Our exemption laws can be sustained only on the ground, that while they in a slight decree limit the liberty of contract, such limitation is for the general welfare of the whole people, and does not interfere with their equal protection and benefit.
In such cases courts can see that the slight restraint of the liberty of contract, is for the common welfare of the people, but no court can see that it is for the common public welfare that the liberty of contract should be taken away from the owner of a building, to enable the seller of materials to collect their value from a man who never purchased them, and has already fully paid the one with whom he contracted for all that he has received. There can be no public necessity for making the contractor the agent of the owner, to enable the seller of materials to collect his pay from one who does not owe him, and with whom he has no contract.
• An agent can have no interest-adverse to his master, but this statute attempts to create an agent for the owner out of the contractor who is opposed to him in every interest. It is an attempt to make the contractor serve two masters, himself and the owner. This can not be done. For this we have the highest authority.
The owner has the right to acquire his building upon the best terms possible, and if he can by making a contract to pay in advance, or by ex *443 change of securities or other property, acquire his • building cheaper than by contracting to pay after four months from its completion, he has the alienable right to so acquire it, and to be protected in its enjoyment, and it is not within the power of the general assembly to compel him to pay a higher price for his building, for the protection of laborers and furnishers with whom he has no Contractual relation.
To enable the contractor, by force of this statute, to enlarge the price to be paid by allowing liens to be taken on the property for labor and materials, would be as unjust as to authorize the owner by statute, to enlarge the building, without a corresponding increase in payment.
But it is urged that the act is constitutional, for the reason that the statute itself must be read into the contract, and that thereby the owner agreed that the contractor may obtain labot and materials for which a lien may be taken against the owner’s property. This begs the question, and assumes the constitutionality of the statute. If the statute is valid it must be read into the contract, but if invalid it binds neither party, and does not become a part of the contract.
It is further urged that the owner has the means of protecting himself against loss by taking a bond, or withholding payment for four months, or collecting his loss from the contractor, and that statutes in restraint of liberty of contract, are in such cases constitutional. There are eases which so hold; notably, Mallory v. LaCross Abattoir Co., 80 Wis., 170. But even in that case it was held that the means of protection must be adequate. It cannot be said that the means suggested would be adequate under the statute in question to pro *444 teet the owner against loss, as he would likely have to pay a higher price in case he should delay payment, or require a bond, or undertake to pay for the labor and material himself. And as to the collecting- from the contractor, there would be no necessity of taking a lien in case of his solvency, and in case of his insolvency, the loss would fall on the owner.
The suggested means of protecting the owner from loss are therefore not sufficient to compensate him for the loss of his liberty to contract to the best advantage, and besides there is no public necessity for singling out owners, and laying such heavy burdens upon them for the benefit of a favored class attempted to be created by this statute, and to do so would not be for the general welfare, and equal protection and benefit of the people.
It is also urged by the friends of the statute, that it is beneficial in this, that it drives all the small and insolvent contractors out of business, and leaves the contracting business in the hands of those who are rich enough to guarantee their contracts. But it is not for the general welfare that small and financially weak contractors should be driven out of business. As well might poor laborers and small furnishers be driven out of business, and thus leave the whole business of building and furnishing to the rich, and give them a monopoly of the whole trade, and drive the weak and poor into starvation. Liberty and the common welfare demand that all rich and poor alike should have an equal chance, and to be treated alike, and laws should be enacted for their equal protection and benefit.
*445 With liberty and the equal protection of the laws, the weak and poor of to-day, become the rich and influential of the future. And it is a narrow, unworthy, and unpatriotic policy, to attempt to drive the poor and weak out of business for the benefit of the rich and influential. One of the principal virtues of the statute claimed by its friends, is, that it has driven all the poor and weak contractors out of business. This result instead of being commended, is to -be deplored.
There are some eases in other states in which statutes, somewhat similar, have been upheld, usually upon the theory that the statute enters into the contract, and is therefore agreed to by the owner, but as an unconstitutional statute cannot enter into a contract without the assent of the parties, those cases are not to be regarded as sound, and we refuse to follow them.
A statute of Michigan similar to the one here in question, was held unconstitutional by the Supreme Court of that state, for reasons which seem sound. Sprey Lumber Co. v. Sault St. Marie Savings Bank, 77 Mich., 199; 43 N. W. Rep., 778; See also Taylor v. Murphy, 148 Pa. St., 337; 23 Atl. Rep., 1134.
The conclusion is that the statute in question, in so far as it attempts to give a lien for materials, machinery, tile or labor obtained by the contractor, is unconstitutional and void.
The following eases throw some light upon the question: Hocking Coal Co. v. Rosser, 53 Ohio St., 12; State ex rel. v. Ferris, 53 Ohio St., 314; Harding v. The People, 160 Ill., 459; Godwill v. Minor, 33 W. Va., 179; 25 Am. S. Rep., 863; Frorer v. The People, 141 Ill., 171, 31 N. E. Rep., 395.
*446 It follows that the Putnam county case should be affirmed, and that the Clark county case should be reversed, and judgment entered upon the finding of fact in favor of Mr. Young.
Judgment accordingly.
Minshall, J,, dissents.