(Cuyahoga County Court of Common Pleas.)

WM. GIMBERT v. JENNIE MADDEN et al.

---

*Construction of the Mechanic's Lien Law.*

1. Material men, laborers and sub-contractors have no claims against the owner, not founded on the contract of the principal contractor.
2. The law presumes, in the absence of fraud, that they had notice of the terms of the original contract.
3. If the principal contractor, by virtue of his contract with the owner, becomes the agent, the agency is special, and the powers of the agent are limited by it; and all persons performing labor or furnishing material for the principal contractor, accept employment with an implied assent to the terms of the original contract between such contractor and the owner.
4. If the building contract between owner and contractor expressly provides that no lien shall be filed no lien can be.

---

DELLENBAUGH, J.

In the case at bar, plaintiff filed a mechanic's lien, as sub-contractor, for work done in and about the roofing of a dwelling house for Jennie Madden, upon a certain parcel of land owned by her on Commonwealth avenue, near its intersection with Gale avenue, in the city of Cleveland, Ohio. The contract for the work and materials in the construction of the dwelling house was made by Jennie Madden, the owner, with H. A. Heimsath, a builder and contractor, in said city. In her answer to plaintiff's petition, Jennie Madden, owner, says, that the contract between herself and Heimsath, for the construction of said dwelling house, was in writing, and among other things provided, that said Heimsath should, and he did thereby waive any and all right of placing a lien upon said premises for labor performed or material furnished for said building, and should deliver the same to her, upon its completion, free and clear from all liens of every kind whatsoever, and that, by reason of the premises, the said plaintiff, claiming through and under the contract of said Heimsath, ought not

to maintain or enforce any lien upon said premises for materials furnished therein.

Plaintiff demurs to the answer of said owner, upon the ground that it does not state facts sufficient to constitute a defense, because the contractual stipulation between the owner and principal contractor therein pleaded, is not sufficient to prevent the filing of liens, and the enforcement thereof.

Now, therefore, the only question presented for the consideration of the court is whether a stipulation in a contract, between an owner and a principal contractor, that such contractor should deliver the property to the owner thereof, upon its completion, free and clear from all liens of every kind whatsoever, will preclude sub-contractors, laborers and materialmen from perfecting and enforcing liens for material and labor used in the construction, alteration or removal of any building, named in the Ohio Lien Law. Plaintiff's right to perfect and enforce a lien as a sub-contractor, is predicated upon Senate Bill Number 29, known as the "Mechanic's Lien Act," passed by the Legislature of Ohio, April 13, 1894. (Volume 91, Laws of Ohio, pages 135, 136 and 137.)

Section 3184 of said bill, among other things provides that, "A person who performs labor or furnishes machinery or material for constructing, altering, repairing, or removing a house, mill, manufactory  *   *   * or other building, by virtue of a contract with, or at the instance of, the owner thereof, or his agent, trustee, contractor or sub-contractor, shall have a lien to secure the payment of the same upon such house, or other building, and upon the material so furnished, and upon the leasehold or otherwise of the owner in the lot or land on which the same may stand, or to which it may be removed.

The constitutionality of this act has not been called in question by said owner, and therefore the court will not voluntarily undertake to pass upon that question.

It will be observed that it is expressly and distinctly provided in section 3184 that, "A person who performs labor or furnishes material for constructing, altering, repairing or removing a house, by virtue of a contract with, or at the instance of, the owner thereof, or his agent, trustee, contractor or sub-contractor, shall have a lien to secure the payment of the same upon such house, and upon the owner's interest, as owner or otherwise, in the land on which it may stand, or to which it may be removed." Clearly, the statute contemplates that no one has the right to encumber the building or land upon which it rests for labor performed or materials furnished, except such as are provided for in the owner's contract. Is it not a self-evident fact, that the statute does not contemplate or intend that any one, except the owner or contractor under him, shall have the right to encumber the building, or land upon which it rests, for labor performed or materials furnished, for constructing, altering, repairing or removing such building?

The owner, Jennie Madden, entered into a contract, in writing, with Heimsath, and no other person, to construct the building. Plaintiff contracted with Heimsath, not with the owner, to roof the building. Heimsath failed to pay Gimbert the contract price for said roofing, and thereupon he filed his lien against both the building and land of Jennie Madden, and now seeks to enforce his lien thereon, by forcing the sale of said property, if necessary, in satifaction thereof.

Do the claims of persons performing labor, or furnishing material, become liens on a building or land therewith connected from the mere fact that the labor was performed or materials furnished, for its construction, alteration, repair, or removal? Most emphatically, no; because all such

liens must be predicated upon either an express or implied contract with the owner. It is also equally certain that the statute implies that the principal contractor, who undertakes to do all the work contracted for, shall have the right, upon the credit of the building, and land as well, to employ labor, and procure all materials necessary to fully complete the building. Under the express provisions of our statutes, all labor performed or materials furnished must be performed or furnished by virtue of a contract, express or implied, with the owner of the building, or his agent, trustee, contractor, or sub-contractor, in order to create a valid lien upon both the building and land, upon which it stands. Now, therefore, is it not apparent, that our statute implies that the principal contractor, who has agreed to do all the work, shall have the authority, upon the credit of the building contracted for, and land on which the same may stand or to which it may be removed, to procure materials and hire workmen needed and required, to fully complete the various parts of the work, which said principal contractor has agreed to do and perform. The legislative intendment being that all persons perform labor and furnish materials upon the credit of both building and land, it, therefore, naturally follows, that it also intended that lien-claimants should have, in good conscience, some sort of regard for the rights of the owner, as well as their own, and therefore such claimants, in making contracts with third persons, are bound to exercise precisely and exactly the same degree of care and caution required of persons not favored by dangerous class legislation, of ascertaining whether such third person has any authority to encumber another person's property for either labor or materials, which the contractor may find necessary to procure from others in order to complete the work.

If plaintiff's construction of the act of 1894 prevails, it simply means that an owner cannot, by the making of even the most "iron clad" contract imaginable, prevent the placing of an incumbrance on his property, created by others, and without his consent. Furthermore it means that while everybody else shall pay for what he contracts for but once, the unforunate owner of land, who attempts to improve it by erecting buildings thereon, must pay twice, notwithstanding the fact that he seeks to protect himself from this palpable and really monstrous injustice by the making of an express contract that the property should be turned over to him free and clear from all liens of any kind whatsoever.

In Harlan v. Rand (27 Pa. St., 511), the Supreme Court of Pennsylvania announces three "clean cut" propositions of law, which have been followed ever since in that state, to-wit:

1. "The debt, which is the subject of the lien, must be founded on a contract, express or implied, with the owner.

2. "When the owner employs a contractor to erect for him a house, a debt founded on a contract of the contractor with a sub-contractor or material-man is, by implication, authorized by the contract of the owner, and, therefore, is the subject of a lien.

3. "It is incumbent on such contractor or material-man to ascertain whether one assuming to be the principal contractor has authority to bind, by lien, the property of the owner."

In Brown v. Cowen, (110 Pa. St., 588), the court below instructed the jury that it made no difference what the contract was between the owner and principal contractor, because if he held himself out to plaintiffs as a contractor, and they were led by his representations to furnish the lumber on the credit of the building, they had a right to a lien. The Supreme Court, however, held: A "contractor can only bind the building by virtue of the peculiar statutory relation he bears to the owner under the

contract." Furthermore, the court said: "This instruction of the court below was palpably erroneous; that the owner of a building could thus be entrapped into the payment of a debt which he never contracted, and which was not contracted by any one having any legal authority to bind him or his estate, is so monstrous that the mere statement of the proposition is a sufficient argument to refute it. It is the plain and obvious duty of one who deals with an alleged contractor to know the relation which he bears to the owner. Failing in this, he furnished lumber and material at his peril."

Mr. Phillips says: "As the lien is a proprietary interest for the securing of a debt arising by implication of law out of the performance of at contract, it can, in general, be created only by the owner, or by some person by him authorized." (Phil. on Mech. L., sec. 497.)

In Schroeder v. Galland (134 Pa. St 277,) the court held: "That the sub-contractor and material-man can have no right against the owner, not founded on the contract of the principal contractor. That if the principal contractor, by virtue of his contract with the owner, becomes his agent, the agency is special, and the powers of the agent are limited by his contract. If he contracts that no lien shall be filed, none can be. The learned Mr. Justice Green, who delivered the opinion of the court in Schroeder v. Galland, supra, amongst other things, said:

"The controlling question of this case is, can the sub-contractor file a lien for the work done and materials furnished by him, notwithstanding the stipulations of the principal contract? If he can, the owner, instead of paying $9,000 for the completed house, according to the contract, will be obliged to pay therefor, nearly $11,000. The plaintiff filed his lien as a sub-contractor under Olmstead, whom he described as contractor, and with whom he contracted He says in his claim of lien:

"The name of the person with whom Conrad Schroeder contracted is named Charles Olmstead." He also states that the name of the owner is Anna M. Galland, the wife of B. Galland. He, therefore, knew that he was dealing and contracting, not with the owner, but with one who was a contractor for the construction of the building. The only connection between the owner and this sub-contractor was through, and by means of, the written contract between the owner and the principal contractor. He could not, in such circumstances, contract with this person without being charged with notice of the contract of the latter with the owner, and by necessary consequence, with notice of all its terms and stipulations. A sub-contractor for construction is certainly bound to know the kind of building that is to be erected, the materials of which it is to be built, the price to be paid for it, and the manner and times of payment. He cannot, under a contract for the erection of a building, at a cost of $1,000, furnish work and materials to the amount of $5,000. He cannot furnish wood as material for the erection of a building to be built of marble or stone or bricks. Nor can he furnish unsuitable materials, even of a kind demanded by the contract, and entitle himself to a lien therefor."

In Mallory v. Lacross, 80 Wis. 170, the Supreme Court of Wisconsin, composed of only three judges, sustained a lien law providing among other things, that the owner is absolutely liable to sub-contractors who complied with the requirements thereof for the amount of their claims, without regard to the contract price for the building, or the sum the owner may be indebted to the contractor. An unusually able, dissenting opinion, however, full of unanswerable law and logic, was delivered by Judge Cassoday, from which we quote the following: "If such claim can be maintained, then upon the same principle the defendant would have been

bound to pay such claim even had the contract required the defendant to pay in advance, and the amount had been so paid in full; or, even after such payment in advance had Nicholas Bros. sublet the whole job, then the defedant would have been obliged to pay over again for all material and labor that went into the job, even though it really exceeded the contract price. If such a claim can be maintained, then upon the same principle the legislature could make every purchaser of goods from a retail dealer, even for cash down, liable for any balance due thereon to the wholesale dealer. It is in effect conceded that no one can defend any such claim upon ethical grounds. The contention seems to be that the legislature had the power to disregard all ethical considerations, and to make the defendant and every other land owner absolutely liable for all material and labor going into any structure upon his land, regardless of whether he pays the contract price in advance, or subsequently.

"The act enables the contractor to limit his own duties, obligations and liabilities by contract, and at the same time enables him, through the agency of a sub-contractor, to bind the owner, without limitation, for all materials and labor that go into the structure. The sub-contractor is not even limited to the specifications contained in the original contract, for by the terms of the act, he may compel the owner to pay for what he never contracted for. It not only makes the owner, without his consent, responsible for the contractor's contracts with sub-contractors, but also for his frauds. It authorizes the sub-contractor to compel the owner to pay the contractor's debts after he has, without notice of any adverse claim, paid to the contractor the whole contract price to enable him to pay his own debts. It does not in terms prohibit the owner from paying in advance or paying without notice, but precludes him, as against a subcontractor, from the benefit of such payment. It authorizes the contractor, after the making of the contract, to do what the legislature could not then do; that is, to change the terms of his contract without the consent of the owner, and hence to impair its obligations.

"Such legislation is a recent invention. It seems to belong to that class which Herbert Spencer had in mind when, according to a recent interview, he said: "Since I began to write, there has been a clear re-action against individual liberty. We are certainly tending towards state socialism, which will be a worse form of tyranny than that of any government now recognized in civilization." If we have no constitutional barriers against such legislation, then Mr. Spencer's opinion, that such reaction and tendency endanger the American states, as well as the European, would seem to rest upon a solid basis, instead of being mere speculation, as might otherwise be supposed.

"To authorize A., through the agency of a sub-contractor, to impose an arbitrary, unjust and absolute liability upon B., without his default, and contrary to the express stipulations in the written agreement between them, and without any notice that will enable him to protect himself against such liability, and without his violating any statute or any law, or committing any tort or wrong, is, certainly, to deprive B. of his property or rights of property without due process of law, and to deprive him of the equal protection of the laws.

"It is true the opinion of the majority of the court is supported, not only by the decisions of this court therein cited, but also of other state courts of high standing, the latest of which is by the Supreme Court of Tennessee, in a case not cited by counsel. Cole Mfg. Co. v. Falls, 16 S. W. Rep. (Tenn.) 1045. But such cases either fail to meet the objection upon which this dissent is based, or, meeting it, fail to give any satisfactory reason for excluding such statutes from the prohibitions mentioned.

It may be that the Supreme Court of the United States will eventually sanction such legislation, but until they do so, I am forced to withhold my assent."

In Spry Lumber Co. v. Sault Sav. Bk. Co.,(77 Mich. 199),the Supreme Court of Michigan passed upon the constitutionality of a lien law similar to our act of 1894, and declared that it was unconstitutional, and therefore void.   The opinion of the court in this case was delivered by the learned and famous Chief Justice Campbell, now deceased, who, amongst other things, said: "It strikes at the foundation of all property in land.   There is no constitutional way for divesting a man's title, except by his own act or default.   Here his act is not required, and his freedom from default is no defense.   He may pay in full, in advance, or otherwise, for all he has contracted for.   He may contract for a house built in a certain way, and of certain materials,and may have to pay for what he never bargained for, and what his building contractor had no right to put off upon him.·   The original contract plays no part in the matter, except as a fact which binds no one and has no significance.   Such a gross perversion of all the essential rights of property is so plain that no explanation can make it plainer."

Mr. Justice Dean, in Waters v. Wolf 162 Pa. St., at pages 170 to 173, both inclusive,says: "Justice Sterrett, in McElroy v. Bradon, 152 Pa. 81, in speaking of the duty on the part of those who expect to charge the owner and yet have no direct contract with him,says: 'That duty can be properly discharged only by inquiring of the owner what the terms of the contract between him and the contractor are.'  In Nice v. Walker, 153 Pa. 125, we held: "The only ground upon which the contractor can bind the building for either materials or labor, is by virtue of the authority delegated to him by the owner, and where no such authority is delegated, but on the contrary is expressly withheld, and he covenants that no liens shall be filed against the building, he cannot file a lien himself, nor can his sub-contractors do so."

It has therefore been settled by these decisions,that such a covenant,exacted by the owner for the protection of his property, is reasonable, and will be enforced; that it binds both the principal contractor and those who contract under him; that it is the plain duty of those who deal with the contractor to ascertain the limit of his authority to bind the owner, if they expect to look to the owner for payment of their debts.   If no unreasonable advantage be sought by the owner and no unreasonable burden be imposed on the sub-contractor or material-man,then the owner exercises only his indefeasible right of enjoyment of his own property when he so contracts—a right not in the power of the legislature to take from him.

It is conceded in the argument that the covenant not to file a lien binds the principal contractor.   Declaring him the agent of the owner in no way changes the situation of the sub-contractor.   His right still depends on the contract, and is limited or wholly negatived by its terms. Unless the legislature can establish between parties competent to contract a new and different one to which neither has assented,the right of all parties originating in the contract must be ascertained from the contract; an inspection of that shows that the owner has protected his property by an express covenant between him and the only one with whom he could contract.   When this contract is made, the owner knows no sub-contractors, for there can be none until, by the assent of two minds, the legal relation of owner and principal contractor be established; but, when that point is reached, the right of the owner is fixed by the covenant of the contrator. Then. and not until then, can there be a sub-contractor,and his right can rise no higher than that fixed by the contract of his principal.   The presumption is, the owner in the exercise of common business prudence as-

certained the character of the contractor, and the contractor the financial ability of the owner; in this they have no advantage over the sub-contractor; the contractor and those with whom he contracts have the same opportunities for intelligent bargaining. If, by the contract already made, no lien can be filed, the sub-contractor knows, or can know it, and if not satisfied of the personal responsibility of the contractor, can demand other security for his work or material. But neither the contractor, nor the legislature can change the contract, as made, without the consent of the owner, one of the parties to it. The sub-contractor "cannot have the benefit of the builder's contract without accepting the conditions upon which those benefits are incurred."

That the legislature may give special remedies for the collection of certain debts, has long been settled; that it may not take one man's property to pay the debt of another against the consent of the owner, is just as well settled. Whatever reasonable regulations the legislature might make, as to notice to sub-contractors and material-men, of the terms of the contract between the owner and the only one with whom he bargains, the principal contractor—such as, that it shall be in writing, and shall be recorded—would be clearly within legislative power. But the second section goes far beyond regulation for the better securing of a remedy; it makes a new contract for the owner with persons wholly unknown to him, notwithstanding his express dissent, and which in effect subjects his property to the payment of a debt he owes not.

It is possible that the scheme of government which contemplates a community of lands and goods, will best promote the happiness of our race; but if so, the people of this commonwealth have said the contrary in their fundamental law." Bevan v. Thackera, 143 Pa. St. 182 (24 Am. St. Rep. 529, and note 534); 19 Am. St. Rep. 691, and note at end of case; 19 Am. St. Rep. 698, and notes 699, 700.

But what, if anything, has our Supreme Court said upon this subject? Let us see. Section 3184, prior to its amendment in 1894, provided: "That a person who performs labor or furnishes machinery or material, for erecting, altering or repairing a house, mill or other building, by virtue of a contract with the owner or his authorized agent, shall have a lien," etc. The rights of persons furnishing material and performing labor under this act were construed by the Supreme Court in Bullock v. Horn, 44 Ohio St. 420. Judge Spear, who delivered the opinion of the court, on pages 424 and 425, says: "In giving a construction to this statute, by fair inference it may be assumed that the rights of the workman and material man, as against the owner, are based upon the latter's contract with the contractor, and while they are subordinate to the contract, and are to be worked out through it, those parties have the right to rest in security upon it, and the means provided by law to secure its application to their demand. In the absence of fraud they are presumed to have notice of the terms of the original contract. Hence, if the original contract showed that payment had been made in advance to the contractor, or if it contemplated the allowance, by the contractor, of set-off then held, or to be acquired by the owner as payment, such provisions would bind the workmen and material men, as they would be held to have accepted employment of the contractor with an implied assent to such terms. But, where the contract was silent as to advance payments, and as to claims of the owner against the contractor, the workmen and the material men could not be held to have accepted employment with a view to such contingencies." Justice Green, in Schroeder v. Galland, 134 Pa. St. 277 (19 Atl. Rep. 632); Justice Cassody, in his dissenting opinion, in Mallory v. LaCross, 80 Wis. 170; Spry Lumber Co. v. Sault Sav. Bank Co., 77 Mich. 199.

See also language of Judge Dean, in Waters v. Wolf, 162 Pa. St., 170-173, both inclusive. See also McElroy v. Bradon 152 Pa. St. 81; Nice v. Walker, 153 Pa.125; Bevan v. Thackera, 143 Pa. St. 182 (24 Am. St. Rep. 529 and note 534); 19 Am. St. Rep. 691 and note; 19 Am. St. Rep. 698 and note 699, 700.

Using substantially the language of Justice Spear, in Bullock v. Horn, supra, for the purpose of construing sec. 3184 as amended in the act of 1894 can it not be fairly assumed that plaintiff's rights as a sub-contractor, in the case at bar, against Jennie Madden, the owner, are predicated upon her contract with Heimsath, the contractor; and while such rights are subordinate to the contract, they must be worked out through it by the means provided by law. Furthermore, the law presumes, in the absence of fraud, that plaintiff had notice of the terms of the original contract itself. Now, therefore, if the original contract, among other things provided, that plaintiff "should waive any and all right of placing a lien on the building, and should deliver the same to the said Jennie Madden free and clear from any and all liens, of every kind whatsoever," such stipulation would clearly bind plaintiff, as well as all other persons performing labor or furnishing material, as they would be held to have accepted employment of the principal contractor with an implied assent to such terms. The allowance of a lien to a sub-contractor is a special privilege granted only by special class legislation, and it is therefore neither a hardship nor unreasonable, to require him to examine the principal contract, for the purpose of finding out whether it is the kind of a contract to justify him in becoming a sub-contractor under it or not.

The argument urged with much force by the learned counsel for plaintiff, that our lien law makes the principal contractor the agent of the owner, proves absolutely nothing. Even if this were so, still such contractor's agency is only a special agency, controlled and limited by the terms of his contract with the owner. The contractor undertakes to build the house on the terms and in the manner prescribed in the contract. Clearly, if he should undertake to do anything beyond that, the contractor exceeds his authority, and does not bind his principal under any rule of law known to the court.

For the reasons already stated, the demurrer to the answer of Jennie Madden is overruled.

Judgment accordingly.

Johnson & Hackley, for plaintiff.

Kline & Tolles, for defendant.